DONALD E. MATTHIEU, Plaintiff, v. PIEDMONT NATURAL GAS COMPANY, Original Defendant, and WALTER J. DAVENPORT, t/a DAVENPORT HEATING AND AIR CONDITIONING COMPANY, Additional Defendant

AND

DONALD E. MATTHIEU and EVELYN S. MATTHIEU v. PIEDMONT NATURAL GAS COMPANY, Original Defendant, and WALTER J. DAVENPORT, t/a DAVENPORT HEATING AND AIR CONDITIONING COMPANY, Additional Defendant.

(Filed 20 January, 1967.)

1. Limitation of Actions § 17—

Upon the plea of the applicable statute of limitations, the burden is upon plaintiffs to show that they instituted their action within the time limited.

2. Limitation of Actions § 4—

A cause of action accrues and the statute of limitations begins to run, in the absence of disability or fraud or mistake, whenever a party becomes liable to an action.

3. Limitation of Actions § 5—

When the basis of the cause of action produces continuing or recurring damages, the cause of action accrues at the time damages are first sustained, the subsequent damages being merely in aggravation of the original damages and not being essential to the cause of action.

**4. Limitation of Actions § 15—  When there is no representation inducing plaintiff to defer suit, defendant is not estopped to plead statute.**

This action was instituted to recover damages resulting from dust and dirt injected into plaintiffs' house by a gas furnace and air conditioner purchased from defendant. Plaintiffs' allegations were to the effect that the defect was obvious from the beginning, that complaints were made to defendant, and that defendant's employees reported no defect could be found in the system but that they would continue to look. *Held:* Plaintiffs' cause of action accrued upon the occurrence of the first damage, and plaintiffs are not entitled to rely upon estoppel of defendant to plead the statute, since defendant consistently took the position that no defect existed and never made any representation that would have led plaintiffs to refrain from suing.

**5. Estoppel § 4—**

Equitable estoppel must be based upon the existence of a false representation, or the concealment of a material fact, with knowledge, actual or constructive, of the truth, and the other party must have been without such knowledge and free from culpable negligence in failing to discover the facts, and the representation must have been intended or expected to be relied upon and must have been reasonably relied upon to injury.

**6. Same—**

The purchasers of a furnace and air conditioning unit may not rely upon negligence of the seller in inspecting the installation after complaint when the purchasers have ready access to the means of equal knowledge of the real facts and are culpably negligent in not properly informing themselves, since if the existence of the defects are patently obvious the purchasers may not complain of absence of notice thereof.

APPEAL by plaintiffs from *McConnell, J.,* March 1966 Civil Session of GUILFORD.

Civil action by Donald E. Matthieu to recover for personal injuries allegedly caused by the negligence of defendant Piedmont Natural Gas Company. Separate action by Donald E. Matthieu and wife, Evelyn S. Matthieu, for damages to real and personal property, allegedly caused by the negligence of defendant Piedmont Natural Gas Company. Upon motion of Piedmont, defendant Davenport, an independent contractor, was made an additional defendant in both actions. The two actions were consolidated for trial.

Plaintiffs offered evidence which tended to show the following: Plaintiffs entered into a contract with defendant Gas Company in 1960 whereby plaintiffs purchased from defendant a forced air furnace and air conditioning system to be installed in plaintiffs' home, then under construction. The system was installed in August 1960. Within four to six weeks thereafter plaintiffs began to notice dust and dirt coming through the register into the house, and this condition continued without interruption until December 1964. The male plaintiff stated, "There was no question in my mind that the

dust was coming from the register." Beginning in 1960, and every year thereafter, plaintiffs made complaints concerning this condition to the employees of the defendant Gas Company, and were told by said employees that no defect could be found in the system which would cause the dirt and dust, but that they would continue to look. The contract between plaintiffs and defendant Gas Company contained a one-year warranty but contained no provision for inspection of the system.

The furnace and duct work were under the dwelling. Male plaintiff was under the dwelling monthly to install a filter for the system. Defendant Gas Company's agents were on the premises and under the house on many occasions after the furnace was installed. In December 1964 plaintiffs had. the system inspected by an agent of Parker Gas & Oil Company, who purportedly found obvious or readily discernible defects. Evidence was offered concerning male plaintiff's personal injuries to the effect, *inter alia,* that after he had been in the house for a few weeks, every time he would go into the house he would "stop up" and that on occasions he would have to leave the house and go to his office in order to sleep. He told defendant's employees that he was allergic to dirt, dust and mold. There was also evidence that plaintiffs' real and personal property were discolored and damaged because of dust, dirt and mold. These conditions existed continuously until December 1964, when the system was repaired.

On 19 March 1965 plaintiffs commenced their actions, alleging, in the alternative, the following causes of action against the original defendant: (1) breach of warranty in the sale and installation of the heating system, (2) negligent installation of the system, and (3) negligent inspection of the system.

At the close of plaintiffs' evidence, the original defendant moved for judgment of involuntary nonsuit. The motion was allowed and judgment entered. Plaintiffs appealed.

*Smith, Moore, Smith, Schell & Hunter and Herbert O. Davis for plaintiff appellants.*

*McLendon, Brim, Brooks, Pierce & Daniels, Hubert Humphrey and Jerry W. Amos for defendant Gas Company.*

BRANCH, J.    The sole question presented for decision is: Did the trial judge err in allowing original defendant's motion for nonsuit? It is stipulated by counsel that the cases be consolidated for the purpose of appeal. The plaintiffs have abandoned all causes of action in their complaint except the action for negligent inspection. In filing its responsive pleadings, the original defendant pled the

three-year statute of limitations in bar of plaintiffs' right of recovery. The period prescribed for the commencement of this action is three years from the time the cause of action accrued. G.S. 1-52. Upon this plea the burden is on plaintiffs to show they instituted their actions within this prescribed period in order to repel the motion for nonsuit. *Shearin v. Lloyd,* 246 N.C. 363, 98 S.E. 2d 508.

A cause of action accrues and the statute of limitations begins to run whenever a party becomes liable to an action, if at such time the demanding party is under no disability. This rule is subject to certain exceptions, such as torts grounded on fraud or mistake, none of which are applicable to the instant case. However, the more difficult question is to determine when the cause of action accrues. In the case of *Mast v. Sapp,* 140 N.C. 533, 53 S.E. 350, this Court said: "Where there is a breach of an agreement or the invasion of an agreement or the invasion of a right, the law infers some damage. . . . The losses thereafter resulting from the injury, at least where they flow from it proximately and in continuous sequence, are considered in aggravation of damages. . . . The accrual of the cause of action must therefore be reckoned from the time when the first injury was sustained. . . . When the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete."

In the case of *Shearin v. Lloyd, supra,* these principles were recognized and applied to a cause of action for malpractice based on the surgeon's negligence in leaving a foreign object in the patient at the conclusion of an operation. The Court held that where there was no fraudulent concealment by the physician, the cause of action could not be maintained more than three years thereafter. See also *Jewell v. Price,* 264 N.C. 459, 142 S.E. 2d 1.

Conceding a negligent failure by Piedmont to inspect the system in 1960, plaintiffs had an immediate right to sue for all damages which accrued therefrom. Plaintiffs presented evidence that they lived in the dwelling from 1960 until December 1964, and that continuously during this period the conditions complained of existed without interruption. The damage which resulted thereafter was *in aggravation of the original damage* and resulted from the first injury.

"'(P)roof of damages may extend to facts that occur and grow out of injury, even up to the day of the verdict. If so, it is clear the damage is not the cause of action.' . . . It is likewise unimportant that the harmful consequences of the breach of duty or of contract were not discovered or discoverable at the time the cause of action accrued." *Jewell v. Price, supra.*

Plaintiffs contend that defendant is estopped to plead the statute of limitations, and rely particularly on the case of *Nowell v. Tea Co.*, 250 N.C. 575, 108 S.E. 2d 889. *Nowell* is distinguishable from the instant case in that the defendant there admitted the existence of a structural defect, performed work to correct the defect, and told the plaintiffs they had found and made the necessary corrections. The defects concerned were not continuous and patent, being concerned with waterproofing, leaks around the windows, and lack of reinforcement called for in the surfacing of a parking lot. The plaintiffs in the *Nowell* case relied on statements made by the defendants until the defendants changed their position shortly before the three-year statute had run by stating that they would no longer be responsible. In the instant case the situation complained of existed patently and continuously for over a period of four years. Piedmont consistently took the position from the date of first notice that no defect existed and that it never made representations that would have led plaintiffs to refrain from suing or to change their position. Plaintiffs' allegations and proof show they knew some defect existed and therefore could not have been misled by the alleged representations of defendants. Defendant never contended that it had found the trouble and made corrections. In *Nowell v. Tea Co.*, *supra*, it is said: "They relied upon the promise and did not sue while efforts to correct the structural errors were underway. The appellant, by its promise, invited the delay and should not complain that the invitation was accepted." Here, the defendant stated it found no defects, undertook no corrective measures, and seemed to invite suit, if any cause existed. Moreover, there are other reasons why the principles of equitable estoppel recognized by this Court do not apply to the instant facts. Considering the doctrine, this Court in the case of *Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824, said: "In order to constitute an equitable estoppel, there must exist a false representation or concealment of material fact, with a knowledge, actual or constructive, of the truth; the other party must have been without such knowledge, or *having the means of knowledge* of the real facts, must not have been culpably negligent in informing himself; it must have been intended or expected that the representation or concealment should be acted upon, and the party asserting the estoppel must have reasonably relied on it or acted upon it to his prejudice. . . . It is a species of fraud which forms the basis of the doctrine, and to prevent its consummation is its object." (Emphasis ours)

Again looking to the facts in the instant case, we observe that the defendant was rendering a gratuitous service in inspecting the system. The defects which plaintiffs alleged to have been found in

December 1964 were defects which were patently obvious to anyone who would look. The evidence shows that one of the plaintiffs was under the house monthly where defects were observable and failed to observe them. It would strain one's credulity to accept the plaintiffs' contention that they lived in a dwelling for four years with a constant and continuous production of large amounts of dust and dirt causing physical illness and property damage, and that both were led to inaction, delay and change of position by defendant's alleged statements. Under such conditions plaintiffs readily had access to the means of equal knowledge of the real facts and were culpably negligent in not properly informing themselves. We can find no species of fraud in defendant's action. Rather, if the doctrine of equitable estoppel is based on the application of the golden rule to everyday affairs of men, the defendant in this case has more than heeded the compulsion of fair play. *McNeely v. Walters,* 211 N.C. 112, 189 S.E. 114.

Plaintiffs' actions were not commenced within three years from the date their cause of action accrued.

There is yet another ground upon which the judgment below must be sustained. Plaintiffs' cause of action is for negligent inspection. "To recover damages for actionable negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach. . . . Plaintiff's action is in tort. Even so, the duty owed by defendant to plaintiff arises from and is determined by the relationship subsisting between them." *Petty v. Print Works,* 243 N.C. 292, 90 S.E. 2d 717. In the event the defendant had gratuitously made inspection in 1960 and found the system in a defective condition, its duty would have been to report that the system was defective. This the plaintiffs already knew, or should have known. To fail to advise plaintiffs of something they already knew, or should have known, would not constitute a breach of duty.

"When a person has knowledge of a dangerous condition, a failure to warn him of what he already knows is without significance." *Petty v. Print Works, supra.*

In the case of *Driver v. Snow,* 245 N.C. 223, 95 S.E. 2d 519, the plaintiff sought to recover damages under implied warranty for injuries resulting from the explosion of a secondhand stove. Affirming judgment of involuntary nonsuit, the Court said: " 'Implied warranty cannot extend to defects which are visible and alike within the knowledge of the vendee and vendor, *or when the sources of information are alike open and accessible to each party.*' " (Emphasis ours) This case does not involve the doctrine of negligent inspection, but it does strongly enunciate a simple principle that

is applicable to the present facts; that is, no one needs notice of what he already knows.

Plaintiffs' evidence is insufficient to support a jury-finding that the plaintiffs were damaged because of negligent inspection by defendant.

For reasons stated, the judgment of nonsuit is

Affirmed.