BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, Plaintiff v. ODELL ASSOCIATES, INC.; NELLO L. TEER COMPANY; LIBBEY-OWENS-FORD COMPANY; GENERAL SPECIALTIES, INC.; and UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendants and NELLO L. TEER COMPANY, Defendant and Third Party Plaintiff v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, Third Party Defendant and HARTFORD ACCIDENT AND INDEMNITY COMPANY, Third Party Plaintiff v. GENERAL SPECIALTIES COMPANY, INC., and EDWIN H. SMITH, Third Party Defendants

No. 8215SC412

(Filed 5 April 1983)

1. **Limitation of Action § 4.1; Sales § 22— damages for defective products — statute of limitations**

    Plaintiff's action to recover damages for defects in glass panels manufactured by one defendant and used by defendant general contractor and defendant subcontractor in the construction of a curtainwall constituting the outside of plaintiff's building was barred under the provisions of former G.S. 1-15(b) and the three-year statute of limitations of G.S. 1-52(5) where plaintiff discovered the defects more than three years before it filed the lawsuit against defendants. Furthermore, defendant manufacturer was not estopped to assert the statute of limitations because of its assurances to plaintiff that the glass panel failures were within industry standards and nothing to worry about.

2. **Architects § 3; Limitation of Actions § 4.3— action against architects — statute of limitations**

    The provisions of G.S. 1-15(c) relating to the time for commencement of a professional malpractice action override the 10-year statute of limitations of G.S. 1-47(2) for actions upon sealed instruments, and plaintiff's claims against defendant architectural firm for breach of contract and negligence were barred by G.S. 1-15(c) where the last relevant act of defendant occurred more that four years before the institution of plaintiff's action.

3. **Seals § 1— corporate seal on contract — no sealed instrument**

    The affixation of a corporate seal to defendant corporation's contract to provide architectural services to plaintiff did not create an instrument under seal to which the 10-year statute of limitations of G.S. 1-47(2) applied where it is apparent that the corporate seal was used only to indicate that the officers who executed the contract were duly authorized to do so.

4. **Principal and Surety § 10— action on performance bond not timely**

    Plaintiff's action on a surety bond executed by defendant general contractor and defendant surety for the construction of a building was barred by a provision of the bond requiring any suit thereon to be instituted within two years from the date on which final payment under the contract fell due where the evidence on motion for summary judgment did not present a question as to whether final payment had been made but showed that plaintiff had accepted

the building as complete and had in fact made final payment more than two years before the suit was instituted.

**5. Principal and Surety § 10— action on construction contract barred—no right of action on performance bond**

There was no merit to plaintiff's contention that even if its action against a general contractor under the construction contract was barred by the statute of limitations, it could nevertheless maintain a separate action against the general contractor and its surety under the performance bond signed by both the general contractor and surety.

PLAINTIFF Blue Cross and Blue Shield of North Carolina (hereinafter Blue Cross or plaintiff) appeals from the order and judgment of *Battle, Judge,* entered 24 September 1981 in Superior Court, ORANGE County, granting the motion for partial summary judgment of defendant Libbey-Owens-Ford Company (hereinafter LOF), dismissing plaintiff's action and granting the motions for summary judgment of defendant Odell Associates, Inc. (hereinafter Odell), Nello L. Teer Company (hereinafter Teer), General Specialties Company, Inc. (hereinafter General Specialties), and United States Fidelity and Guaranty Company (hereinafter USF&G).

Hartford Accident and Indemnity Company (hereinafter Hartford) appeals from the order and judgment of *Battle, Judge,* entered 25 September 1981 in Superior Court, ORANGE County, denying Hartford's motion for summary judgment against Teer and USF&G.

Heard in the Court of Appeals 18 February 1983.

*Womble, Carlyle, Sandridge & Rice, by Jimmy H. Barnhill and Joseph T. Carruthers, for plaintiff-appellant Blue Cross and Blue Shield of North Carolina.*

*Young, Moore, Henderson & Alvis, by Joseph C. Moore, Jr. and Joseph C. Moore, III, for defendant-appellee Odell Associates, Inc.*

*Nye, Mitchell, Jarvis & Bugg, by John E. Bugg, for defendant-appellee and third-party plaintiff-appellee Nello L. Teer Company, Inc.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by C. T. Leonard, Jr., James T. Williams, Jr., and Reid L. Phillips, for defendant-appellee Libbey-Owens-Ford Company.*

*Spears, Barnes, Baker & Hoof, by Alexander H. Barnes, of counsel, for defendant-appellee Libby-Owens-Ford Company.*

*Maupin, Taylor & Ellis, by Charles B. Neely, Jr., and Nancy L. Rendleman, for defendant-appellee United States Fidelity & Guaranty Company.*

*Wade & Carmichael, by R. C. Carmichael, Jr., for defendant-appellee and third-party defendant-appellee General Specialties Company, Inc.*

*Newsom, Graham, Hedrick, Murray, Bryson, Kennon & Faison, by O. William Faison and Joel M. Craig, for third-party defendant and third-party plaintiff-appellant Hartford Accident and Indemnity Company.*

HILL, Judge.

PARTIES AND RELATIONSHIPS

We first identify the parties to this lawsuit:

1. Plaintiff Blue Cross is a nonprofit corporation with its registered and principal office in Orange County, North Carolina, near the City of Chapel Hill.

2. Odell is a North Carolina corporation engaged in architecture and engineering. On or about 5 December 1969, Blue Cross entered into a contract with Odell in which Odell agreed to prepare plans and specifications for the construction of a building to be used as a service center for Blue Cross. Under the contract, Odell was to prepare plans, drawings, and specifications and provide architectural services incident to the general administration of the construction contract. For its services Odell was to be paid $500,000.

3. On or about 16 February 1971, Blue Cross entered into a contract with defendant Teer, engaging Teer as general contractor and providing that Teer was to be fully responsible for construction.

4. On or about 16 February 1971, the defendant USF&G entered into a contract with Teer in which USF&G as surety and Teer as principal became bound to Blue Cross in the sum of $8,000,000 conditioned upon Teer's prompt and faithful performance of the construction contract.

5. On or about 29 December 1970, the defendant subcontractor General Specialties undertook in conjunction with Odell to design a glass curtainwall that in substance would constitute the outside area of the building, and in conjunction with Teer to build the curtainwall. General Specialties promised as follows: "For two years from the date of acceptance by owner, we guarantee the entire curtainwall against structural failure and water penetration to the building interior."

6. On or about 6 April 1972, Hartford executed a performance bond under which General Specialties as principal and Hartford as surety became bound to Teer.

7. LOF manufactured and supplied the glass panels used in construction of the curtainwall. It also assisted defendants Odell and General Specialties in the design and preparation of plans for the curtainwall and glazing procedures, by reviewing the drawings and specifications prepared by Odell and General Specialties, by conducting tests, and by meeting with Blue Cross and giving assurances regarding the performance of the glass panels comprising the curtainwall.

By this lawsuit, Blue Cross seeks to recover damages to compensate the cost of replacing glass panels that have failed and the cost of remedial measures that will be necessary to eliminate further failure of the panels.

As to the defendant Odell, Blue Cross has asserted claims for breach of contract and negligence; as to Teer, for breach of contract and breach of warranty; as to General Specialties, for negligence and breach of express warranty; as to LOF, for breach of implied warranty, negligence, breach of express warranty and strict liability; and as to USF&G and Teer, for breach of contract and of the performance bond executed by Teer and USF&G; Blue Cross further alleges that all the defendants are jointly and severally liable for the damages sustained by plaintiff.

Each defendant filed responsive pleadings, asserting, among other things, absence of liability and that in any event Blue Cross's claims were barred by the statute of limitations. Various cross claims were asserted among the defendants; and, in addition, defendant Teer filed a third party complaint against Hartford, General Specialties' bonding company, asserting Teer's right

to recover from Hartford should Teer be found liable to plaintiff. An order was entered severing the part of the case dealing with the curtainwall.

The trial judge entered an order and judgment granting LOF's motion for partial summary judgment and granting the motions for summary judgment of Odell, Teer, General Specialties and USF&G from which Blue Cross appeals. The trial judge entered an order and judgment denying Hartford's motion for summary judgment against Teer and USF&G, and Hartford appeals.

### THE BUILDING

The four walls of the building, called the curtainwall, are composed primarily of approximately 4800 glass panels and rise three stories above a ground level lobby area. The four sides of the building are sloped, the north and east sides facing the sky at a 45° angle, and the south and west sides facing the ground at a 45° angle. The glass panels consist of two glass panes one-fourth inch thick with one-half inch vacuum space between the panes. These panels are supported on metal frames. As designed, the panels have superior insulating qualities if the seals separating the two panes of glass are intact. Seals on a substantial number of units have failed, depriving the panels of their insulating quality; have become clouded because of vapor between the panes which has impaired visibility; and have become a threat to the safety of employees who work in the building. Conceivably, almost all the panels in the north and east sides are defective and will need to be replaced soon.

The following dates will aid in a general understanding of the lawsuit:

1. Blue Cross-Odell Contract—27 October 1969.

2. Blue Cross-Teer Contract—16 February 1971.

3. Teer-General Specialties Subcontract—28 January 1972.

4. Building Occupied—Summer, 1973.

5. First unit observed to have failed because of fogging and condensation—29 April 1975.

6. Inspection visit by Mr. Coleman of LOF—last week of September, 1975.

7. First letter from Mr. Coleman of LOF to Blue Cross—2 October 1975.

8. Meeting between representatives of Blue Cross, Odell, Teer and LOF to discuss the problem—16 March 1976.

9. Second letter from Mr. Coleman of LOF to Blue Cross—12 April 1976.

10. Suit instituted—16 March 1979.

Although all parties deny responsibility, there is evidence in the record that some of the panels failed because of one or more of the following reasons:

1. The panels were so designed and constructed that the perimeter seals did not prevent moisture and water from penetrating around and through the dividers into the area between the glass panes. This occurred because the sealing material was not uniformly applied, and/or the sealant over the metal was not waterproof, permitting water to reach the metal and cause it to rust. Water then entered between the panes.

2. The "leak and weep" system did not work properly so as to permit the water to run off.

3. The mullion covers—even if properly designed—were not affixed and sealed properly.

Initially, LOF attempted to cancel its twenty-year warranty to furnish the panels for replacement, but in the course of discovery agreed to reinstate the warranty and furnish the panels for a one-time replacement. LOF, therefore, did not move for summary judgment on plaintiff's claims of express warranty.

### LIBBEY-OWENS-FORD (LOF)

[1] Blue Cross first argues that Judge Battle erred in granting LOF's motion for summary judgment because:

1. LOF is liable for its negligent acts.

2. LOF is liable to Blue Cross for breach of warranty.

3. Blue Cross claims against LOF are not barred under the statute of limitations, because the action was brought within three years of discovery and because LOF is estopped to assert the statute of limitations.

We conclude the three year statute of limitations [G.S. 1-52(5)] bars any claim of Blue Cross against LOF and do not find it necessary to address the remaining two arguments of Blue Cross.

Statutes of limitations are "inflexible and unyielding. They operate inexorably without reference to the merits of plaintiff's cause of action." *Shearin v. Lloyd*, 246 N.C. 363, 370, 98 S.E. 2d 508, 514 (1957). Where the statute is properly pleaded and all facts are admitted or established, the question of limitations becomes a matter of law, *Little v. Rose*, 285 N.C. 724, 208 S.E. 2d 666 (1974), and summary judgment is appropriate. *Brantley v. Dunstan*, 10 N.C. App. 706, 179 S.E. 2d 878 (1971).

On the record, two questions arise: (1) whether Blue Cross "discovered or ought reasonably to have discovered" the alleged defects more than three years before it commenced this action on 16 March 1979, and (2) whether LOF is estopped to plead the statute of limitations. We conclude that Blue Cross discovered or ought to have discovered the defects more than three years prior to filing the lawsuit, and that LOF is not estopped to plead the statute of limitations.

In 1974, Philip Alford became building and maintenance supervisor for the Blue Cross building. On 29 April 1975, he first noted that a glass panel had "failed," and began keeping a chronological record of glass failure on the building. He discovered four more defective panels in early September 1975 and reported them to his superior, W. Albert Graham, who, in turn, reported them to Blue Cross Vice-President Frank W. Shelton. In his memorandum to Shelton, Graham stated, "Philip is very concerned about this, and rightly so . . . ." In a letter to Nello Teer dated 12 September 1975, Philip Alford said, "We seem to have an epidemic of fogged glass units with condensation trapped between interior and exterior sheets." In the same letter he requested that General Specialties replace four units under its contractual warranty and identified locations of the damaged units. On 12 September 1975, Alford also wrote to the architect,

Odell Associates, saying, "We are seriously concerned that subject glass is exhibiting deterioration, i.e.; fogging/condensation between interior/exterior sheets, uneven darkening of coloration and an initial release of varitran coating. Recent correspondence records that four (4) total units currently require replacement . . . ." This letter noted that the curtainwall warranty would expire on 12 October 1975 and requested a conference with representatives from Odell and LOF to assess the situation.

Thereafter, on 26 September 1975, representatives of Blue Cross met with Mr. Turner of Odell, LOF personnel, and Mr. Clark of Teer, at which time the "failures" in the glass were discussed. Vice-President Shelton of Blue Cross wrote to Mr. Dubose of Teer thereafter "to formally establish" the claim of Blue Cross "for defects in some of the curtainwall glass . . . ."

During the last week of September 1975, Mr. Coleman of LOF made an inspection visit to the premises, and on 2 October 1975 in a letter to Blue Cross wrote: "The fact that four of the units have experienced seal failure is certainly not something to be concerned about."

On 16 March 1976, representatives of Blue Cross met with representatives of Teer, General Specialties, LOF and Odell. Mr. Alford of Blue Cross noted that twelve units had either shattered or had the seal broken to that date, and a "certain percentage" of the units could not be observed from the interior of the building because the area between the ceiling and the floor above obscured vision. Mr. Coleman of LOF stated that usually any shattering of this type of glass would occur in the first two or three years after installation and should decrease over the years. He noted there were 4,720 units and that failures from the time of installation to date totaled less than one-half of one percent. Mr. Shelton of Blue Cross indicated that management was concerned that failure would continue at an accelerated rate and asked Mr. Coleman if LOF would share the cost of labor and materials for the now defective glass panes and others that may appear in future years. Mr. Coleman advised he would not be able to accept any financial responsibility for LOF beyond the replacement of the glass units required by the original contract documents.

Thereafter, on 12 April 1976, Mr. Coleman wrote Mr. Shelton that there was no reason to believe the rate of seal failures would increase over the next few years. Although failures continued, LOF expressed interest only in the cause of failure and not in sharing liability for replacement. On 16 March 1979 — exactly three years after Mr. Coleman specifically refused to accept liability beyond replacement of the glass units — Blue Cross filed suit.

G.S. 1-15(b) [repealed by Session Laws 1979, Ch. 654, § 3, effective October 1, 1979; now governed by G.S. 1-52(5)] provides in pertinent part as follows:

[A] cause of action . . . having as an essential element . . . a defect in or damage to property which originated under circumstances making the injury, defect, or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs . . . .

From the facts set out, it is apparent that Blue Cross discovered the defects in the curtainwall units more than three years before it filed the lawsuit. However, Blue Cross argues that LOF is estopped to plead the three-year statute of limitations. Blue Cross cites the assurances given by Mr. Coleman that the damage was a simple maintenance problem and that there was nothing to worry about. Moreover, the architect, contractor, and subcontractor never expressed any concern or reservations about statements made by LOF.

The argument of Blue Cross is without merit. Without question, the management of Blue Cross knew the glass panels were failing as early as 25 April 1975. Subsequent failure of the units was ample evidence that the problem was a recurring one. The maintenance supervisor, Alford, was diligent in reporting the glass panel failures. Assurances that the glass failures were within industry standards and nothing to worry about fade in the face of repeated failures of the glass panels over the next few months. Mr. Coleman of LOF never offered to replace the units beyond LOF's obligations under the twenty-year warranty. Blue Cross slept on its rights until the opportunity to bring suit had expired.

The case of *Matthieu v. Gas Co.*, 269 N.C. 212, 152 S.E. 2d 336 (1967), is instructive. In that case, plaintiff alleged that defendant had negligently failed to inspect his furnace. As in this case, the plaintiff "knew some defect existed and therefore could not have been misled by the alleged representations of the defendants." *Id.*, at 216, 152 S.E. 2d at 340. The court thus concluded that Piedmont Natural Gas Company, which had consistently denied that Matthieu's furnace was defective, was not estopped to plead the statute of limitations. The same rule applies to the case before us.

This assignment of error is overruled.

### AS TO ODELL ASSOCIATES, INC.

[2]   Plaintiff assigns as error the entry of summary judgment for Odell.

It is undisputed that on 27 October 1969 Odell and Blue Cross entered into a standard AIA contract. The signature block for Odell appeared as follows:

ARCHITECT: A. G. Odell, Jr. and Associates, Inc.

/s/ A. G. Odell, Jr.

ARCHITECTS REGULATIONS NO. 387

ATTEST: /s/ Helen M. Collins

---

(Corporate seal embossed here)

No mention of the seal appeared in the body of the contract. Mr. Odell submitted an affidavit stating the Odell corporate seal was placed "for the purpose of indicating that execution of the contract was duly authorized by the corporation and to confirm the fact that the undersigned, as an individual, was not a party to the contract." He denied any intention of creating a sealed instrument. The contract was executed on behalf of Blue Cross by Mr. McMahon, who submitted an affidavit stating that no one ever questioned Mr. Odell's authority to sign for the corporation and that he fully understood the contract was with the corporation and not with Mr. Odell personally.

Plaintiff contends that the seal in these circumstances invokes a ten-year statute of limitations under the provisions of

G.S. 1-47(2). Plaintiff concedes that the last relevant act of Odell occurred more than four years before the institution of this action, and that if, as Odell contends, G.S. 1-15(c) is applicable, plaintiff's claims against Odell are barred.

Initially, we note that G.S. 1-15(c) was declared constitutional by this Court in *Roberts v. Durham County Hospital Corp.*, 56 N.C. App. 533, 289 S.E. 2d 875 (1982), *aff'd* --- N.C. ---, --- S.E. 2d --- (No. 273PA82, Jan. 11, 1983). We address two questions: (1) whether G.S. 1-15(c) applies, and (2) if G.S. 1-15(c) is inapplicable, whether G.S. 1-47(2) controls.

G.S. 1-15(c) states in pertinent part:

Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action . . . .

Citing the opening phrase of this statute, "[e]xcept where otherwise provided by statute," Blue Cross argues that G.S. 1-15(c) is inapplicable and the ten-year statute of limitations, G.S. 1-47(2), governs. We disagree. Section 1-15(c) pertains to statutes running from the accrual of an action. There are two kinds of statutes of limitations: (1) "simple" statutes of limitations which concern a limitation period only, and (2) "compound" statutes of limitations which concern a "time of accrual" and a "limitation period," *e.g.*, G.S. 1-50(5) and G.S. 1-52(9). *See* Lauerman, *The Accrual and*

*Limitation of Causes of Actions for Nonapparent Bodily Harm and Physical Defects in Property in North Carolina,* 8 Wake Forest Law Review 327 (1972). *See Flippin v. Jarrell,* 301 N.C. 108, 270 S.E. 2d 482 (1980), *reh'g denied,* 301 N.C. 727, 274 S.E. 2d 228 (1981); *Johnson v. Podger,* 43 N.C. App. 20, 257 S.E. 2d 684, *disc. rev. denied,* 298 N.C. 806, 261 S.E. 2d 920 (1979). The introductory portion of G.S. 1-15(c), "[e]xcept where otherwise provided," modifies the verb "accrue." The phrase refers us to other accrual statutes, not to a "simple" statute such as G.S. 1-47(2) which contains no accrual provision. We find that the phrase "in no event" refers to the fact that no professional malpractice action may be commenced "more than four years from the last act of the defendant giving rise to the cause of action." We conclude that G.S. 1-15(c) overrides G.S. 1-47(2). The interpretation suggested by Blue Cross would severely limit the application of G.S. 1-15(c), since all statutes of limitations are either "compound" or "simple," and all statutes of limitations might therefore be included in the "except as otherwise provided" language.

We do not quarrel with applying G.S. 1-15(c) to architects. The statute does not limit the professions to which it applies, but covers "malpractice arising out of the performance or failure to perform professional services." Architecture is undoubtedly a profession.

[3] We find no merit in plaintiff's argument that affixation of the corporate seal to a document automatically raises it to the status of an instrument under seal. In certain areas of the law an instrument under seal is required, *e.g.,* a valid conveyance of land. Indeed, parties may desire to extend the statute of limitations by adding a seal to a document, or by adopting an existing seal by use of language such as "signed, sealed, and delivered." In such instances, the intent of the parties to create a specialty may be shown from the instrument or testimony outside the instrument, nothing else appearing.

> The chief value of the corporate seal now is as prima facie authentication that the document is the act of the corporation and that the officers who have executed it have been thereunto duly authorized. This function of the corporate seal, however, must be distinguished from its use as a general seal. For example, the mere fact that the corporate

seal appears on the instrument other than in the usual place of the private seal would not make the instrument a deed or specialty in the absence of a recital of affixing the seal or of extrinsic evidence showing an intention to have it serve the function of a general seal.

2 S. Williston, *A Treatise on the Law of Contracts* § 271A at 168 (3d ed. 1959 & Supp. 1982). Because the routine use of a corporate seal is merely to demonstrate authority to execute a document, the mere presence of a corporate seal, without more, does not convert the document into a specialty. A document is not considered a specialty unless there is evidence of intent to create an instrument under seal in the document itself such as a recital that the instrument would be under seal, or the words "corporate seal" or "affix corporate seal." *Simonson v. International Bank of Washington*, 312 F. 2d 887 (D.C. Cir. 1963) (*per curiam*); *Sigler v. Mt. Vernon Bottling Company*, 261 F. 2d 378 (D.C. Cir. 1958) (*per curiam*).

The evidence before the court on motion for summary judgment clearly shows no intention to create a specialty. It is apparent that the corporate seal was used as authentication of the officers' authority to act on behalf of the corporation.

Summary judgment in favor of Odell is affirmed.

## TEER AND USF&G

[1]   We reach the same conclusion respecting Teer and USF&G as we reached regarding LOF and Odell: Plaintiff's claim is barred by the statute of limitations. For that reason, we find it unnecessary to address the remaining arguments of Blue Cross against these defendants. As to Teer, we incorporate by reference our reasoning set forth in the argument concerning LOF.

[4]   The performance bond for construction was executed by Teer as principal and USF&G as surety and delivered to Blue Cross as beneficiary. One of the conditions of the bond is as follows:

Any suit under the bond must be instituted before the expiration of two (2) years from the date on which final payment under the contract falls due.

The record reveals: (1) all but $3,000 of the contract price was paid; (2) all work under the contract was completed in 1975 or

1976, in the sense that Teer had finished its work and left the premises; (3) all of the retainage was paid; (4) a representative of Blue Cross testified he believes the $3,000 had probably been paid.

Blue Cross contends the following conditions of its contract with Teer were not fulfilled, and no final payment was made:

1. Teer must submit to Odell written notice that the work is ready for final inspection and acceptance; and

2. Teer must submit a final application for payment. Under Article 9.7.3, the following must also occur before final payment falls due:

   a. Teer must submit to Odell an affidavit that all payrolls, bills for materials and equipment and other indebtedness connected with the work for which the owner or his property might in any way be responsible, have been paid or otherwise satisfied; and

   b. Teer must submit to Odell the consent of USF&G to final payment.

Blue Cross argues that under the above state of the record, summary judgment was improvidently granted because there was a question about whether final payment was made. We do not agree.

The record shows the building was accepted by Blue Cross for beneficial occupancy on 14 July 1973, and the substantial completion date was designated by Odell as 1 August 1973; the curtainwall was complete and accepted 12 October 1973; all general building warranties or guaranties expired as of 14 July 1974, and the curtainwall warranty from the curtainwall subcontractor expired as of 12 October 1975; and no later than 1975 plaintiff had accepted the building as complete and undertaken its obligation as the owner to maintain it accordingly. In addition, plaintiff's corporate counsel wrote Teer's counsel by letter dated 10 January 1978 and acknowledged plaintiff's final acceptance of the building. While Blue Cross may contend no final acceptance occurred prior to this date, the actions between the parties belie any such contention.

Furthermore, by letter dated 7 January 1975, Teer sent to Odell request for payment no. 37 with the following statement:

Enclosed is our Request for Payment No. 37 which brings us up to date on the amount due with the exception of $3,000 which I have not claimed. This $3,000 represents work yet to be completed on the sign and the associated landscaping problems which I am in the process of trying to get resolved.

The application for payment attached to such letter shows Teer was applying for payment of the remaining balance of the full contract sum less $3,000. The application further shows that the amount of Teer's fixed fee being retained by plaintiff under the contract had been reduced to zero as of the date of application. Thus, with payment of the amount due on this application Blue Cross had fully paid all of Teer's fixed fee due under the contract, which was to be paid to Teer at the time of completion of the work. There is evidence the remaining work was done later in 1975. On 18 July 1975, Teer wrote Odell requesting final payment of the remaining $3,000, indicating the landscaping in question and the front entrance sign had been completed. Although the record is silent about the affidavit that bills for labor and material are paid and about a consent by USF&G that final payment be made, these ministerial acts become immaterial in face of final payment in fact.

We find it unnecessary to discuss again the question of whether the printed form word "seal" next to Teer's typed name and the impression of the corporate seal in the absence of the phrase "witness my hand and seal," or "signed and sealed," indicates that the bond was to be executed under seal. (See that portion of this opinion dealing with Odell, *supra.*)

[5] We are unimpressed with Blue Cross's argument that even if its action against Teer under the construction contract is barred, it nevertheless may maintain a separate action against Teer and USF&G under the performance bond issued by USF&G and signed by both USF&G and Teer. This contention is without merit.

The liability of a surety is measured in terms of the principal's agreement. *Lumber Co. v. Surety Co.,* 12 N.C. App. 641, 184 S.E. 2d 399 (1971), *cert. denied,* 280 N.C. 180, 185 S.E. 2d 704 (1972). The obligation of the surety under the performance

bond is to be read in light of the contract it secures. *Realty Co. v. Batson,* 256 N.C. 298, 123 S.E. 2d 744 (1962). Obviously, Teer signed this bond not for the benefit of Blue Cross but for the benefit of USF&G, its surety, to preserve USF&G's right of indemnification against Teer under applicable suretyship law.

We affirm the decision of the trial judge regarding Teer and USF&G.

### GENERAL SPECIALTIES

[1] We do not reach the question of negligence on the part of General Specialties but conclude that the claim of Blue Cross is barred by the three-year statute of limitations for the same reasons set out in the section of this opinion dealing with LOF. We affirm the decision of the trial judge allowing the motion for summary judgment of General Specialties.

### THE CROSS ACTION BY HARTFORD ACCIDENT AND INDEMNITY COMPANY AGAINST USF&G AND TEER

Because of our disposition of the matters previously discussed, the questions raised in the cross action by Hartford against USF&G and Teer become moot.

The judgments of the trial judge are

Affirmed.

Judges WELLS and JOHNSON concur.