SQUARE D COMPANY v. C. J. KERN CONTRACTORS, INC., AND SIX ASSOCIATES, INC.

No. 8328SC468

(Filed 21 August 1984)

1. Corporations § 22; Seals § 1— corporate seal on contract—10-year statute of limitations inapplicable

In an action to recover for breach of contract and negligence on the part of defendant general contractor in the construction of a building, there was no merit to plaintiff's contention that the jury could have found that the contract between plaintiff owner and defendant contractor was under seal because the corporate seal was placed on the contract, and the trial court properly granted summary judgment for defendant, since the mere affixation of a corporate seal to a document does not automatically raise it to the status of an instrument under seal; the contract in question contained no recitals or other evidence of an intent to create an instrument under seal; and defendant's president averred that the corporate seal was placed on the contract for the purpose of indicating that its execution was duly authorized by the corporation and to confirm that he, as an individual, was not a party to it.

**2. Architects § 3— negligence—action barred by 6-year statute of limitations**
    Plaintiff's action to recover for the alleged negligence of defendant ar-
chitects in designing and inspecting a wall was barred by the statute of limita-
tions where defendants completed their work for plaintiff prior to 1 January
1974 and plaintiff filed its complaint on 16 March 1982, more than six years
from the last act or omission giving rise to the action. G.S. 1-50(5).

    Judge PHILLIPS dissenting.

APPEAL by plaintiff from *Lewis, Robert D., Judge.* Orders
entered 7 January 1983 in Superior Court, BUNCOMBE County.
Heard in the Court of Appeals 12 March 1984.

*Long, Parker, Payne & Matney, P.A., by Ronald K. Payne
and Mary Elizabeth Arrowood, for plaintiff appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by James
T. Williams, Jr., and Reid L. Phillips, for C. J. Kern Contractors,
Inc., defendant appellee.*

*Kennedy, Covington, Lobdell & Hickman, by F. Fincher Jar-
rell, for Six Associates, Inc., defendant appellee.*

WHICHARD, Judge.

I.

The trial court granted summary judgment in favor of de-
fendants, a contractor and an architectural firm, on the ground
that plaintiff's claims against them were untimely filed. We af-
firm.

II.

Count One of the complaint, which plaintiff filed on 16 March
1982, alleged the following:

In 1972 plaintiff entered a contract with defendant C. J. Kern
Contractors, Inc. (Kern), as general contractor, for construction of
an addition to a building on lands which plaintiff owned. Kern
completed the construction pursuant to the contract.

On or about 1 November 1980 plaintiff, through its agents
and employees, began to notice lateral bowing in a wall of the ad-
dition. The bowing was caused by Kern's deviations, in several
respects, from the contract specifications. The structural integrity

of the wall was seriously damaged as a result of these deviations, and the wall had to be repaired at great expense to plaintiff.

As a direct and proximate result of Kern's deviation from the contract specifications and its breach of the contract, plaintiff incurred damages in repairing and stabilizing the wall in an amount in excess of $150,000. The defects in the wall, and breach of Kern's contract, were not apparent or discoverable until the damage occurred and the wall "bowed out."

Count Two of the complaint made essentially the same allegations, except that the defects in plaintiff's wall were attributed to Kern's negligence in construction rather than to its breach of contract.

Count Three of the complaint alleged the following: In 1971 plaintiff entered a contract with defendant Six Associates, Inc. (Associates) for the provision of basic architectural services. Under the terms of that contract Associates subsequently undertook to provide architectural services on the construction by Kern of the addition to the building on plaintiff's land. Associates was negligent in designing the wall in question, and in the inspection of its construction, in specified respects. As a result of Associates' negligence plaintiff incurred damages in repairing and stabilizing the wall in excess of $150,000.

Plaintiff prayed that "it have and recover, jointly and severally, of each of the Defendants . . . the sum of $150,000.00 . . . and the costs of [the] action."

### III.

Pursuant to G.S. 1A-1, Rule 12(b)(6), Kern moved to dismiss the complaint on the ground that it showed on its face that the action was barred by the applicable statute of limitations. Associates also moved for dismissal under Rule 12(b)(6) on the ground that "the . . . action is barred by the applicable statute of limitations including G.S. 1-50(5)."

The parties stipulated that affidavits and evidence forecast by discovery could be considered by the court, and that Kern's motion could be treated as one for summary judgment. The pertinent matters outside the pleadings which the court considered included:

(1) An affidavit from the head of Associates' Structural Engineering Department averring that Kern completed the addition to plaintiff's building prior to 1 January 1974, and that Associates completed all work performed under its contract with plaintiff prior to 1 January 1974.

(2) Plaintiff's admission, in response to Associates' request, that Associates completed all work performed under its contract with plaintiff prior to 1 January 1974, except that "'as built' drawings may have been supplied in 1974."

(3) Plaintiff's admission, in response to Kern's request, that Kern's acts or omissions in construction of the addition occurred more than six years prior to institution of this action.

(4) The deposition of plaintiff's plant engineering manager, who was responsible for "coordinating and working directly with" Kern and Associates, which stated:

It was late in 1973 when most of the work had been accomplished. The construction was finished by 26 November 1973. The "punch list may not have been completed" by then, "but in any event those items on the punch list were finished by January 1 of '74."

The bowing of the wall was brought to his attention in the fall of 1980 by the maintenance foreman. When he looked at the wall he could see that its whole length had been caulked previously.

He was familiar with a loss report filed with Affiliated FM Insurance Company in November 1980. The report stated that four years earlier employees had complained about cold air, and caulking had been provided "at the wall at floor level." The year before he gave the deposition employees again complained and the wall again was caulked.

(5) The loss report filed for plaintiff with Affiliated FM Insurance Company, which showed a "date of loss" of 1 November 1980 and a "date inspected" of 24 November 1980, and which stated that "[a]pproximately four years ago, [plaintiff's] employees [had] complained about cold air at the east side of the building," and that "[c]aulking was provided at the wall at floor level."

(6) An affidavit from Kern's president, who executed the contract on Kern's behalf, averring that Kern's corporate seal was placed on the contract for the purpose of indicating that its execution was duly authorized by the corporation and to confirm that he, as an individual, was not a party to it; that at no time was there any discussion or other communication between the parties or their agents regarding whether the contract would be a "sealed" instrument within the meaning of G.S. 1-47(2), or for any other purpose; and that neither he nor Kern ever intended that the contract would be a "sealed" instrument within the meaning of G.S. 1-47(2), or for any other purpose.

(7) An affidavit from an employee of plaintiff averring that the defects alleged in plaintiff's complaint were not discovered until November 1980. Attached to the affidavit was the original contract between plaintiff and Kern which showed execution by Kern's president and affixation of Kern's corporate seal.

The court considered "the pleadings, admissions, answers to interrogatories, stipulations of counsel, affidavits, depositions, and other matters of record"; found that there was no genuine issue of material fact and that Kern was entitled to judgment as a matter of law; and entered summary judgment for Kern. In a separate order it treated Associates' motion as one for summary judgment; found that there was no genuine issue as to any material fact and that Associates was entitled to judgment as a matter of law; and entered summary judgment for Associates.

Plaintiff appeals.

## IV.

### CONTRACTOR

[1] Plaintiff's sole argument for reversal of the summary judgment in favor of Kern is that the jury could have found the contract between plaintiff, as owner, and Kern, as contractor, to be under seal, and thus subject to G.S. 1-47(2), the ten year statute of limitations. The argument is based on the affixation of Kern's corporate seal to the contract.

Because our review is limited to questions presented in the briefs, N.C.R. App. P. 28(a), plaintiff in effect concedes that unless this argument has merit, the trial court ruled correctly. A recent

decision of this Court, *Blue Cross and Blue Shield v. Odell Associates*, 61 N.C. App. 350, 301 S.E. 2d 459, *disc. rev. denied*, 309 N.C. 319, 306 S.E. 2d 791 (1983), applied to the uncontroverted forecast of evidence, requires a holding that the trial court ruled correctly on the question presented.

The mere affixation of a corporate seal to a document does not automatically raise it to the status of an instrument under seal.

> Because the routine use of a corporate seal is merely to demonstrate authority to execute a document, the mere presence of a corporate seal, without more, does not convert the document into a specialty. A document is not considered a specialty unless there is evidence of intent to create an instrument under seal in the document itself such as a recital that the instrument would be under seal, or the words "corporate seal" or "affix corporate seal."

*Blue Cross, supra*, 61 N.C. App. at 362, 301 S.E. 2d at 465-66.

The contract here contains no recitals or other evidence of an intent to create an instrument under seal. The only forecast of evidence on this question, the affidavit of Kern's president, expressly denied the existence of such intent. The president averred that Kern's corporate seal was placed on the contract for the purpose of indicating that its execution was duly authorized by the corporation and to confirm that he, as an individual, was not a party to it. He further averred that at no time was there any discussion or other communication between the parties or their agents regarding whether the contract would be a "sealed" instrument within the meaning of G.S. 1-47(2), or for any other purpose; and that neither he nor Kern ever intended that the contract would be a "sealed" instrument within the meaning of G.S. 1-47(2), or for any other purpose.

In the absence of recitals or other evidence in the contract itself of intent to create an instrument under seal, and confronted with clear, uncontroverted evidence that no such intent existed, the trial court did not err in refusing to deny Kern's motion for summary judgment on the ground that the contract was a sealed instrument subject to the ten year statute of limitations. Insofar as the sealed instrument question was determinative, summary

judgment for Kern was appropriate. Since that is the only question presented, the order granting summary judgment in favor of Kern, and dismissing counts one and two of the complaint with prejudice, must be affirmed. N.C.R. App. P. 28(a).

## V.

### ARCHITECT

[2]  A. Associates' motion to dismiss, which was treated as a motion for summary judgment, was made "on the grounds that the plaintiff's action is barred by the applicable statute of limitations including G.S. 1-50(5)." While the trial court did not indicate the statute on the basis of which it ruled for Associates, we hold that the judgment was proper under the provisions of G.S. 1-50(5) (1983).

G.S. 1-50(5) (1983) provides, in pertinent part:

a. No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

b. For purposes of this subdivision, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

. . . .

9. Actions against any person . . . who performs or furnishes the design, plans, specifications, surveying, supervision, testing or observation of construction

. . . .

. . . .

g. The limitation prescribed by this subdivision shall apply to the exclusion of G.S. 1-15(c), G.S. 1-52(16) and G.S. 1-47(2).

The uncontroverted forecast of evidence established that Associates completed its work for plaintiff, and that plaintiff's building was completed, prior to 1 January 1974. Plaintiff filed its complaint on 16 March 1982, "more than six years from the later

of the specific last act or omission of [Associates] giving rise to the cause of action or substantial completion of the improvement." G.S. 1-50(5)a. G.S. 1-50(5) by its terms thus clearly bars plaintiff's claim against Associates.

B. We note that G.S. 1-50(5) was rewritten substantially in 1981. Act of June 22, 1981, ch. 644, § 1, 1981 N.C. Sess. Laws 924, 924-25. The amended version, quoted above in pertinent part, became effective on 1 October 1981, but was made inapplicable to litigation pending at that time. *Id.* § 2, at 925; *see Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 426 n. 3, 302 S.E. 2d 868, 872 n. 3 (1983). This action was not pending at that time, but was filed on 16 March 1982, a date several months subsequent to the effective date of the amended version. We thus have quoted and applied the amended version, believing it to be the applicable provision.

The result would be the same, however, under the original version of the statute, which was enacted in 1963 and was in effect when plaintiff contracted with Associates and Associates performed its work for plaintiff. *See* Act of June 19, 1963, ch. 1030, § 1, 1963 N.C. Sess. Laws 1300, 1300-01; *Lamb, supra,* 308 N.C. at 426, 302 S.E. 2d at 872. Regardless of which version of G.S. 1-50(5) applies, then, the statute by its terms bars the action.

C. Associates has contended that G.S. 1-15(c) is the applicable statute. This statute establishes an outer limit of "four years from the last act of the defendant giving rise to the cause" for commencement of actions "for malpractice arising out of the performance of or failure to perform professional services." G.S. 1-15(c). Because G.S. 1-50(5) applies to the fact situation presented, *see Lamb, supra,* and because by its terms it applies, when applicable, "to the exclusion of G.S. 1-15(c)," G.S. 1-50(5)g, we believe G.S. 1-15(c) to be inapplicable. Again, however, assuming the contrary, the result is the same, and plaintiff's action against Associates remains barred by the express terms of the statute.

D. Plaintiff contended in the trial court, and contends on appeal, that if G.S. 1-15(c) is deemed to apply to its claims, that statute "is unconstitutional in that it violates Article I, Section 18 of the Constitution of North Carolina by denying Plaintiff's access to the Courts and . . . in that it violates the Fourteenth Amendment to the Constitution of the United States of America by de-

Square D Co. v. C. J. Kern Contractors

nying Plaintiff equal protection under the law." We have noted our belief that G.S. 1-15(c) is inapplicable, and that the 1981 version of G.S. 1-50(5) is the governing statute. The precise arguments made by plaintiff with regard to G.S. 1-15(c) were made with regard to the 1963 version of G.S. 1-50(5) in *Lamb, supra.* Our Supreme Court expressly and unanimously upheld the constitutionality of that statute against those arguments. *Lamb, supra,* 308 N.C. at 433-38, 440-45, 302 S.E. 2d at 876-79, 880-83. The reasoning of that decision is equally applicable whether applied to the 1963 version of G.S. 1-50(5), to its 1981 version, or to G.S. 1-15(c). Regardless of which statute controls, then, plaintiff's constitutional arguments cannot prevail in this jurisdiction.[1]

## VI.

For the foregoing reasons, the summary judgments in favor of Kern, the contractor, and Associates, the architect, are

Affirmed.

Chief Judge VAUGHN concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

A written contract that has the defendant's seal on it is some proof, it seems to me, that the contract is under seal. Plaintiff having produced such a contract, a factual issue was raised, I think, and its case should not have been dismissed on defendant's word that the seal did not mean what it appeared to. If a seal or any other part of a written contract has no *prima facie* standing until buttressed by a sworn affirmation that it truly represents or

---

1. The Supreme Court acknowledged in *Lamb* that there is a division of authority on the equal protection issue, and it cited cases *contra* its holding. *See Lamb, supra,* 308 N.C. at 437, 302 S.E. 2d at 878. For a contrary view on the constitutionality, under the "open courts" provision, of a "statute of repose" similar to those in question here, see this Court's opinion in *Bolick v. American Barmag Corp.,* 54 N.C. App. 589, 284 S.E. 2d 188 (1981), *modified and affirmed,* 306 N.C. 364, 293 S.E. 2d 415 (1982). *See also Daugaard v. Baltic Coop. Bldg. Supply Assoc.,* 349 N.W. 2d 419 (S.D. 1984) (statutes of repose "unconstitutionally locked the courtroom door before appellants had an opportunity to open it" and "are violative of, and repugnant to, constitutional provisions insuring the citizenry of open courts").

expresses the intent of the parties, there would be little or no reason for using written or sealed contracts in the first place.

As to the statute of limitations or statute of repose issue, though the majority opinion is in accord with an unanimous decision of our Supreme Court, I nevertheless respectfully, but firmly, dissent. In my opinion, the General Assembly had no rational basis for immunizing architects and builders against all legal liability just six years after improvements are made to real estate. If G.S. 1-50(5) had been drafted to apply only to improvements that are expected to be used and whose defects usually become manifest within a few years, it perhaps could be rationally defended as being in the public interest. But there can be no possible justification, in my view, for exempting from liability after such a short period the builders and designers of bridges, skyscrapers, dams, factories, coliseums, school buildings, auditoriums, hotels, theaters, and other improvements to real estate that the public has every right to use in safety for much longer periods. While this case involves only a building wall that bulges, other cases, as is obviously foreseeable, will involve more dire consequences to property and human life alike; and to say that the potential producers of such destruction and damage can be absolved of liability even before the damage occurs is to render meaningless, at least to injured and damaged plaintiffs in civil litigation, the equal protection clauses of the federal and state constitutions and Article I, Section 18 of the North Carolina Constitution. This is not a permissible modification or substitution of a civil remedy — such as the Workers' Compensation Act — which due process under Article I, Section 18 permits in the progress and development of society; it is an abolition of accountability to the public for a special class, in exchange for which no one else in society gets anything whatever. And that some other states have done the same thing alters its character not a whit.