Steven F. AUNE and Karen A. Aune,
husband and wife, Plaintiffs
and Appellees,

v.

B-Y WATER DISTRICT, Defendant
and Appellant.

No. 16707.

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1990.

Decided Dec. 5, 1990.

Larry F. Hosmer, Yankton, for plaintiffs and appellees.

Thomas E. Alberts, Avon, for defendant and appellant.

SABERS, Justice (On reassignment).

B-Y appeals from a $12,000 jury verdict in favor of Aune claiming sovereign immunity applies because it is an agency or subdivision of the state.

## Facts

Steven and Karen Aune (Aune) purchased land in rural Yankton County in 1984. Two years before Aune bought his land, his predecessor discontinued her membership in the B-Y Water District (B-Y) which supplied water to the property. When Aune attempted to get the water turned back on, B-Y refused unless Aune paid the accrued monthly minimum charges of $1400 for the two years the water had been off. After several attempts to resolve the dispute, Aune sued. In 1989, a jury found B-Y's refusal to deliver water both tortious and a violation of SDCL 46A-9-48.[1]

■■■ B-Y appeals claiming the trial court erred in not granting summary judgment and judgment notwithstanding the verdict based on the defense of sovereign immunity. We reject this argument and hold that:

1. SDCL 46A-9-3 permits a cause of action against a water user district.

2. A water user district is a business enterprise with a commercial purpose and is not entitled to sovereign immunity.

3. SDCL 3-22-2(1) is unconstitutional to the extent that it purports to extend sovereign immunity to a water user district.

### 1. A cause of action is permitted.

Article III, § 27 of the South Dakota Constitution provides that "[t]he Legislature shall direct by law in what manner and in what courts suits may be brought against the state." SDCL 46A-9-3 pro-

vides in part: "A water user district may be organized as provided in this chapter, and may sue and be sued in its corporate name."

■■■ Although, as argued by B-Y, the "sue and be sued" clause based on *Kringen v. Shea*, 333 N.W.2d 445 (S.D.1983), does not *create* a cause of action in tort, it certainly permits a cause of action in tort if one exists. To read the "sue and be sued" clause any other way is contrary to the "plain meaning and intent of the Legislature" by giving effect to only one-half of the clause. Such an interpretation permits a water user district to sue, but prohibits a person wrongfully injured by the water user district from suing. Therefore, even though the "sue and be sued" clause does not create a cause of action in tort, it permits one. *Cf. Federal Land Bank of St. Louis v. Priddy*, 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408 (1935) (Statute providing that federal land banks could sue and be sued as fully as natural persons demonstrates Congressional intent that federal land banks not be immune from suit).

In fact, the Legislature has provided a procedure in the statutes in order to bring suit.[2] Not only is notice to be given to the public entity but also to the attorney general. SDCL 3-21-3.[3]

### 2. B-Y is a business enterprise with a commercial purpose.

In *Jensen v. Juul*, 66 S.D. 1, 5, 278 N.W. 6, 8 (1938), we stated: "Although a corporation may be public, and not private, because established and controlled by the

---

1. SDCL 46A-9-48 provides in part: "No person ... shall be liable for the payment of any rent or charge for water storage, water supply, or for any of the costs of operation of such district, unless a contract therefor has been entered into between such person ... and the water user district furnishing such water storage or water supply."

2. **SDCL 3-21-2. Notice prerequisite to action for damages—Time limit.** No action for the recovery of damages for personal injury, property damage, error or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place and cause of the injury is given to the public

entity as provided by this chapter within one hundred eighty days after the injury.

3. **SDCL 3-21-3. Persons to whom notice must be given.** Notice shall be given to the attorney general and the following officers as applicable:

(1) In the case of the state of South Dakota, to the commissioner of administration;

(2) In the case of a county, to the county auditor;

(3) In the case of a municipality, to the mayor or city finance officer;

(4) In the case of a school district, to the superintendent of schools;

(5) In the case of other public entities, to the chief executive officer or secretary of the governing board.

state for public purposes, it does not follow that such corporation is in effect the state and that the same immunity from liability attaches." In *L.R. Foy Constr. Co., Inc. v. South Dakota State Cement Plant Comm'n*, 399 N.W.2d 340, 347 (S.D.1987), we reaffirmed this position and explained that a corporation's status as an agency of the state does not automatically shield the corporation from suit: "[W]here a state creates or organizes a corporation and operates [the] same for a commercial purpose, it is ordinarily held subject to suit, the same as any public [sic: private] corporation organized for the same purpose" (quoting 72 Am.Jur.2d *States, Territories, and Dependencies* § 106 (1974)). Many other states also recognize that sovereign immunity does not extend to a state's commercial or non-governmental activity. *See, e.g., Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986); *Graney v. Board of Regents of University*, 92 Wis.2d 745, 286 N.W.2d 138 (Ct.App.1979); *Perkins v. State*, 252 Ind. 549, 251 N.E.2d 30 (1969); *Schippa v. West Virginia Liquor Control Comm'n*, 132 W.Va. 51, 53 S.E.2d 609 (1948); *Platte Valley Public Power and Irrigation Dist. v. Lincoln County*, 144 Neb. 584, 14 N.W.2d 202 (1944).

■ The important question is how to distinguish between governmental and commercial activity. The test is not whether B–Y was organized or operated for profit. By its very nature a public corporation will seldom, if ever, be established for the purpose of generating profits. The better approach is to assess whether the activity is something only the state can accomplish or whether it could be effectively accomplished by a private enterprise. As the Michigan Court of Appeals has stated:

"[A]s a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effec-

tively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune."

*Everett v. County of Saginaw*, 123 Mich. App. 411, 333 N.W.2d 301, 302 (1983) (quoting *Parker v. City of Highland Park*, 404 Mich. 183, 200, 273 N.W.2d 413, 419 (1978) (Moody, J., concurring)); *cf. Eagle Ins. Co. v. State*, 131 Misc.2d 357, 500 N.Y.S.2d 478 (Ct.Cl.1986).

The delivery of water is not an inherently governmental activity that only the state can effectively accomplish. Indeed, a water district functions more like a cooperative than a state agency since it is controlled by the landowners and subscribers in the district.[4] Moreover, subjecting B–Y to liability would not interfere with the state's ability to govern, primarily because the state treasury cannot be used to pay any liability. The water user district has "no power of taxation, or of levying assessments for special benefits; and no governmental authority shall have power to levy or collect taxes or assessments for the purpose of paying, in whole or in part, any indebtedness or obligation of or incurred by the district[.]" SDCL 46A–9–47. Even the commercial profits that are generated by the water user district are not shared with the state. The water user district is self-supporting the same as any other commercial business.

■ The Wisconsin Supreme Court has held that a state entity with characteristics similar to a water user district is outside the scope of sovereign immunity. *Majerus v. Milwaukee County*, 39 Wis.2d 311, 159 N.W.2d 86 (1968). The court described the entity's characteristics as follows:

The Armory Board has power to convey real estate and dispose of personal

---

4. A water user district's governing body is not publicly elected. Only those who own land in the district or contract for services may vote for directors, and that includes corporations. SDCL 46A–9–26. Someone who owns land *and*

contracts for services is entitled to *two* votes. *Id.* Furthermore, only a landowner in the district is eligible to be a director. SDCL 46A–9–30.

property without express authority from the state. It has the power to hold and disburse its own funds independent of state warrants. It is given no appropriation but has the power to borrow money and issue and sell bonds and other evidences of indebtedness to accomplish its purposes. The debts thus created are satisfied out of rents and interest the Armory Board receives from the property it acquires.

*Id.,* 39 Wis.2d at 314–315, 159 N.W.2d at 87. These characteristics were found to be "independent proprietary functions" of the Wisconsin State Armory Board which sufficiently distinguished it from the sovereign state as such—even though the board lacked the power to tax and was ultimately dependent on the state in certain other respects. A water user district has similar "independent propriety functions": it may acquire and dispose of real or personal property, SDCL 46A–9–40; it may disburse funds upon the approval of the district's board of directors, SDCL 46A–9–67; it may borrow money and incur indebtedness for any corporate purpose, SDCL 46A–9–56; it may pay any indebtedness or liability only from its operation revenues or issuance of bonds, *id.;* it has the power of eminent domain, SDCL 46A–9–46, but it has no power of taxation, SDCL 46A–9–47. These extensive, independent powers compel the conclusion that a water user district is like a private enterprise and distinct from the state, and, consequently, is outside the state's sovereign immunity shield.

■ In short, the function of a water user district is commercial and it should be treated the same as any other commercial enterprise. We abide by our statement in *Foy Constr., supra* at 346: "Where the State elects to operate a business enterprise solely for commercial purposes, it ought not be permitted to avoid its legal responsibility by invoking the doctrine of governmental immunity." As a business enterprise with a commercial purpose, B–Y ought not be permitted to hide behind the state's sovereign immunity.

### *3. Sovereign immunity does not extend to business enterprises with a commercial purpose.*

■ Having concluded that B–Y is a business enterprise with a commercial purpose, it follows that the legislature cannot extend the *state's* sovereign immunity to shield B–Y from damages arising in contract or tort.

In *Oien v. City of Sioux Falls,* 393 N.W.2d 286 (S.D.1986), we held that the extension of sovereign immunity beyond traditional bounds was unconstitutional under the "open courts" provision of the South Dakota Constitution. In *Oien,* we interpreted the "open courts" provision as a guarantee that "for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy." *Id.,* at 290 (citing *Simons v. Kidd,* 73 S.D. 41, 46, 38 N.W.2d 883, 886 (1949) and *Mattson v. Astoria,* 39 Or. 577, 65 P. 1066, 1067 (1901)). While *Oien* dealt with an improper extension of the state's sovereign immunity to attempt to shield functions of a municipality, the principle remains the same. Here, we deal with an improper extension of the state's sovereign immunity under SDCL 21–32A–3 [5] to attempt to shield functions of a business enterprise with a commercial purpose by defining it as a "public entity" under SDCL 3–22–2.[6]

---

5. **SDCL 21–32A–3. Immunity of public entities—Affirmative defense.** Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21–32A–1, any public entity is immune from liability for damages whether the function in which it is involved is governmental or proprietary. The immunity recognized herein may be raised by way of affirmative defense.

6. SDCL 3–22–2(1) defines the term "public entities" as:

"... the state of South Dakota, all of its branches and agencies, boards and commissions. The term also includes all public entities established by law exercising any part of the sovereign power of the state, including, but not limited to municipalities, counties, school districts, townships, *water districts established pursuant to Title 46A,* sewer, sanitary, and conservation districts, and all other legal entities that public entities are authorized by law to establish[.]" (Emphasis added.)

It is important to note that the state's sovereign immunity is limited to the state itself and its governmental subdivisions such as counties, school districts, townships and, to a lesser extent, municipalities. It is not proper to expand it to every conceivable collective enterprise that comes along. We must remind ourselves (and the Legislature) that the state's sovereign immunity is the state's sovereign immunity and nothing more. It belongs to the state and to no one else.

Therefore, the attempted extension of governmental immunity under SDCL 21–32A–3 to B–Y Water District as a so-called "public entity" under SDCL 3–22–2(1) is unconstitutional. *See Oien, supra,* and *Foy Constr.,* 399 N.W.2d 340. Consistent with the holdings of *Oien* and *Foy,* we affirm.[7]

MILLER, C.J., and MORGAN, J., concur.

HENDERSON and WUEST, JJ., dissent.

HENDERSON, Justice (dissenting).

Trends have recently developed concerning the abolition of certain sovereign immunities. *See generally* Prosser and Keeton on Torts § 131 (1988) (Prosser) and Speiser, Krause and Gans, The American Law of Torts § 6 (1985) (Speiser). Although one or two states seem to have retained something similar to total sovereign immunity,[1] the great majority have now consented to at least some liability for torts (including South Dakota) "in all cases retaining the immunity at least to the extent of basic policy or discretionary decisions." *Prosser* at 1044. This writer believes that "basic policy" means the basic policy as expressed by the legislature of each state digesting these reforms. Each individual state's immunity continues to shift rapidly as courts and legislatures have adjusted to each branch's reforms. As such, the states can be grouped roughly as follows:

First, about seven or eight states, though technically retaining immunity from suit in the law courts, have established administrative agencies to hear and determine claims against the state.[2] *Prosser* at 1044. In most cases it appears to be contemplated that the agency's award will be routinely paid or that appropriations will be made to fund it. Usually the agency is directed either to make awards where a judgment would be given against a private person at law, or to do justice and equity. *Prosser* at 1044. In most instances nearly complete relief appears available, subject only to any dollar limit on the state's liability which may be imposed.[3] *Prosser* at 1044.

Second, a group of nine states have waived the tort immunity in some limited class of cases,[4] including South Dakota, which typically seem to be a specie of cases in which the state or its agency has procured liability insurance that will pay any judgment. South Dakota has such a statute. It expresses:

**SDCL 21–32A–3.** Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21–32A–1, any public entity is immune from liability for damages

---

**7.** It is worth noting that the author of the dissent joined the *Oien* majority in voiding a similar legislative attempt to impermissibly expand the scope of sovereign immunity, and that he concurred specially in the *Foy* decision to express "total" support for the sovereign immunity aspect of its holding which found that the State Cement Plant was not immune to suit in either contract or tort. *Foy Constr.,* 399 N.W.2d at 351 (Henderson, J., concurring in part).

**1.** Maryland and Mississippi appear to have retained the immunity as to the state itself, with very little exception. Liability of officers may moderate this immunity. *Prosser* at 1044.

**2.** Alabama, Arkansas, Georgia, Kentucky, North Carolina, Tennessee, West Virginia, Wisconsin. In some instances the state may retain its own immunity but waive the immunity of a political subdivision such as a county. *Prosser* at 1044.

**3.** Some states in all three groups mentioned here impose dollar limits on recovery, e.g., N.C. Gen.Stat. § 143–291 (Administrative process, $30,000); S.C.Code 1962, § 10–2623 (Abrogation limited to motor vehicles, $20,000); West's Fla. Stat.Ann. § 768.28 ($50,000). *Prosser* at 1045.

**4.** Connecticut, Delaware, Kansas, New Hampshire, North Dakota, Oklahoma, South Carolina, South Dakota and Texas. *Prosser* at 1045.

whether the function in which it is involved is governmental or proprietary. *Brown v. Egan Consol. School D. 50–2,* 449 N.W.2d 259 (S.D.1989). One or two states have injected the distinction, to a large degree followed in the law of municipal immunity, so as to retain the immunity for "governmental" activities, but to abolish it for "proprietary" or "commercial" activities of the state.[5] *Prosser* at 1045. The practical effect for most of these states is that there will be tort liability in motor vehicle cases but with limited exceptions. In one or two instances, the state has provided for insurance and waived immunity only for a few of its agencies or departments.[6] *Prosser* at 1045. South Dakota has not, under the insurance waiver statute, specified *any* agency or department under the scheme of the insurance/waiver statutes. Thus, though this group of states partially waives immunity, the protection afforded here for the injured person may come to appreciably less than the protection afforded in states which retain immunity in name and provide a purely administrative redress. *Prosser* at 1045.

Third, a group of approximately 30 states, the largest single group, have abrogated immunity in a substantial or general way.[7] In this group of 30 states, as well as some other states, liability may be present for nonfeasance as well as misfeasance, even though the discretionary immunity is retained, usually joined by specifically enumerated immunities as well. On the whole, however, the liability of states in this group is approximately as broad as, or broader than, the liability of the federal government under the tort claims act. By

judicial decision of this Court, we have painted a mosaic with the lawyers and trial judges in this state; thus, there has been, seemingly, a certain groping-searching or attempt to reconcile and distinguish various sovereign immunity decisions.

This entire tort scenario, as I view it, portrays a large expansion of responsibility for torts throughout the United States. It appears that the majority opinion is again, by judicial fiat, broadening tort liability in this state. This Court is holding that the Aunes may recover in tort, for the breach of B–Y's statutory duty to provide water service to them, in that B–Y had no authority to refuse water service to them.

We are posed with the question:

Did the trial court err in determining that B–Y, a political subdivision of South Dakota and a public entity, is not entitled to the defense of sovereign immunity?

I believe that it did and I would accordingly reverse.

In my discussion, I agree that the Legislature went too far in passing a statute which provides immunity from suit for any public entity whether its function is proprietary or governmental. In my research, I am unable to find any statute like SDCL 21–32A–3 in the United States of America. As an example, our State Cement Plant, which makes millions of dollars per year by selling cement all over the nation, could never be sued for its commercial activities under SDCL 21–32A–3. This would be a preposterous position, namely that the Cement Plant could openly enter into contracts all over the nation, breach them, and

---

5. M.S.A. § 3.996(107). Kansas adopted this distinction by judicial decision in *Carroll v. Kittle,* 1969, 203 Kan. 841, 457 P.2d 21, but a later statutory scheme appears to make this moot. *Prosser* at 1045. Heretofore, our State Legislature has not made this distinction but this Court has followed the "governmental"/"proprietary" distinction.

6. There seems to be no general insurance-waiver statute in Mississippi, but particular statutes sometimes make provision for particular agency, e.g., Miss.Code 1972 § 37–29–83 (narcotics bureau may insure, immunity waiver). *Prosser* at 1045.

7. Alaska, Arizona, California, Colorado, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Louisiana, Maine, Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, Washington, Wyoming and the District of Columbia. Michigan, which uses a unique scheme of immunities, probably also belongs in this classification. All the states listed here allow tort liability in a variety of situations, but many of them also retain substantial areas of immunity. *Prosser* at 1045.

never be legally liable for them.[8] To compare the non-profit water districts in South Dakota to our State Cement Plant, is to compare, using an old cliche, apples and oranges.

In *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n.*, 349 N.W.2d 419 (S.D.1984) writing for this Court over one tough dissent, I was ridiculed for extolling the open court's provision of our state constitution. I withstood the literary gaffe and lived long enough to see that writing cited with approval in the following cases: Numerous foreign jurisdictions have cited *Daugaard* for our interpretation of the open court's doctrine including *State ex rel. Wyoming Workers' Compensation Div. v. Halstead*, 795 P.2d 760 (Wyo.1990); *Hayes v. Mercy Hosp. and Medical Center*, 557 N.E.2d 873, 136 Ill.2d 450, 145 Ill.Dec. 894 (1990); *Hess v. Snyder Hunt Corp.*, 392 S.E.2d 817, 240 Va. 49 (1990); *White v. State*, 784 P.2d 1313 (Wyo.1989); *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 782 P.2d 915 (Okla.1989); *Horton v. Goldminer's Daughter*, 785 P.2d 1087 (Utah 1989); *Sandoe v. Lefta Associates*, 551 A.2d 76 (D.C. App.1988); *Sandoe v. Lefta Associates*, 559 A.2d 732 (D.C.App.1988); *Reich v. Jesco, Inc.*, 526 So.2d 550 (Miss.1988); *Zapata v. Burns*, 542 A.2d 700, 207 Conn. 496 (1988); *Lucas v. U.S.*, 757 S.W.2d 687, (Tex.1988); *Hardy v. VerMeulen*, 512 N.E.2d 626, 32 Ohio St.3d 45 (1987); *Mominee v. Scherbarth*, 503 N.E.2d 717, 28 Ohio St.3d 270, 28 O.B.R. 346 (1986); *Hanson v. Williams County*, 389 N.W.2d 319 (N.D. 1986); *Mega v. Holy Cross Hosp.*, 490 N.E.2d 665, 111 Ill.2d 416, 95 Ill.Dec. 812 (1986); *Berry By and Through Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985); *Whiting-Turner Contracting Co. v. Coupard*, 499 A.2d 178, 304 Md. 340 (1985); *Theriault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 108 Idaho 303 (1985); *Kenyon v. Hammer*, 688 P.2d 961, 142 Ariz. 69 (1984); *Square D. Co. v. C.J. Kern Contractors, Inc.*, 318 S.E.2d 527, 70 N.C.App. 30 (1984).

I believed in the open court's provision then and I believe in it now. But there has to be a limit. Not every set of facts can be fit into the same suit of clothes. The open court's provision simply cannot be used in every factual scenario. Witness, the water districts of this state. I take judicial notice of the water user districts in South Dakota, via the Department of Water & Natural Resources hierarchial history on file: (1) Rapid Valley Water User District; (2) North Grand Water User District; (3) Randall Water User District; (4) Tripp County Water User District; (5) Lakeside Water User District; (6) B-Y Water User District; (7) T-M Water User District; and (8) Howes Water User District. These water districts in South Dakota are not commercial enterprises as the majority decision would have you believe. These districts, serving tens of thousands of South Dakotans, are trying to serve rural South Dakota by distributing water which is fit to drink and clean to wash with; these water user districts can only exist as a creature of statute and a creature of government. They are also trying to conserve the water resources of South Dakota and, in so doing, act for the welfare and benefit of the people of this State.

The majority decision is, conceivably and conceptually, an economic disaster for it opens the floodgates of litigation against

---

**8.** Footnote 7, written under the hand of Sabers, J., seeks to disparage my previous position by literary mirrors. Indeed, I supported this Court's position that the State Cement Plant was not immune to either contract or tort. Sabers, J., would, by innuendo, suggest that I have abandoned my special concurrence in *Foy.* Nothing could be further from the truth. These water districts are not contracting all over the nation nor are they seeking millions of dollars of profit, such as the State Cement Plant does, and which from time to time, the State Legislature appropriates therefrom to run the state government.

Regarding the allusion to my vote in *Oien,* in this dissent I have not argued in favor of the constitutionality of SDCL 21–32A–3. Rather, this dissent agrees with the unconstitutionality of that statute. Therefore, the first aspect of footnote 7 is unfounded, ill conceived and patently illogical. This dissent is focused and based upon the broad scheme of the governmental/proprietary rule. The purpose of these rural water districts is to serve the people, not to make money. Their purpose is not to promote private wealth or to exist as an opportunity for moneymaking.

this corporate body politic and other governmental entities, described above, for lawsuits against it, not to mention boards and directors. The Legislature did not say that charges for water service were to be controlled by the judiciary, rather these water service-charges, by these public entities, are controlled by state statute. B–Y possesses other attributes which entitles it to be classified as an agency of the state, including:

(1) B–Y can only be dissolved on the conditions and in accordance with SDCL 46A–9–69 through 46A–9–75;

(2) No individual or private entity of any type can benefit from B–Y's assets;

(3) B–Y functions like any other governmental body because its governing body is publicly elected. SDCL 46A–9–26 provides for persons entitled to vote. The district's elections are just like a state, school, county or other governmental election. The requirement is that a voter must be a landowner or entryman residing within the district. Residency for voting is required by all governmental units;

(4) B–Y cannot dissolve without a vote of the persons within the district entitled to vote per SDCL 46A–9–73;

(5) B–Y's operation is not commercial for profit. Revenues are used for operation, repayment of debt, and to provide water to the district's users. SDCL 46A–9–65;[9]

(6) No corporate dividends are declared as one would envision in a private enterprise or commercial setting; the elected officials are not paid salaries such as is seen in commercial enterprises. By and large, they are ordinary folks who are simply serving their neighbors and community.

The majority decision further argues that an exception to immunity applies in this case because the Legislature waived

B–Y's immunity from suit by including in the statutes § 46A–9–30, the power "to sue and be sued" in its corporate name. It is contended that this language in the statute permits suit against B–Y. However, we laid this question to rest in *Kringen*, where suit was brought against the Board of Regents at a state college to recover for injuries sustained while the plaintiff performed on a trampoline during a class. In that case this Court said:

> Statute permitting board of regents to "sue and be sued" did not, in absence of statutory authority expressly waiving sovereign immunity, create a cause of action in tort against the state college board. SDCL 13–49–11.

Before *Kringen*, we held in *Guillaume v. Staum*, 328 N.W.2d 259 (S.D.1982):

> In absence of a statute waiving sovereign immunity from tort liability, a statute authorizing a school district to sue and be sued did not create a cause of action in tort. SDCL 13–5–1.

In the present case, we also find that in the absence of a statute waiving sovereign immunity from tort liability, the "can sue and be sued" provision of SDCL 46A–9–3 does not create a cause of action in tort. Rather, I am of the opinion that in any instance in which an entity is given the power "to sue and be sued" said language means only that the entity has the status and capacity to enter our courts and does not signify a waiver of sovereign immunity against suit. *Self v. City of Atlanta*, 377 S.E.2d 674, 259 Ga. 78 (1989).

Inasmuch as B–Y's activities are governmental by nature and not commercial, it is entitled to the defense of sovereign immunity. This is the precedent of this Court and, thus, this state. *Schaub v. Moerke*, 338 N.W.2d 109 (S.D.1983); *Conway v. Humbert*, 82 S.D. 317, 145 N.W.2d 524 (1966).

---

9. SDCL 46A–9–65 provides:

*All income or profit and revenue of the works* and all moneys received from the sale, conveyance, distribution, or disposal of water, use of water, or water storage, and from the operation, lease sale or other disposition of the works, property and facilities acquired under the provisions of this chapter, *shall be paid to the credit of the appropriate water fund. All costs of operation, maintenance, and repairs of the works, and all administrative and clerical expenses of the water user district, shall be paid from the water fund.* (emphasis supplied mine).

We can issue decisions from this judicial body with ease and literary placidity. After all, we need not effectuate our dictates. But what of the public? What of those who become frustrated with public service as a result of being sued for their volunteer efforts to bring water to South Dakota's prairie? Yes, water to drink and wash their clothes and furnish to their livestock. I truly believe this Court is making a serious mistake in subjecting these water user districts to tort liability. It appears to me that the greatest good for the greatest number of rural people is the measure of right or wrong and not the lawsuit of this couple who want the water furnished to them but refuse to abide by the rules and regulations of the water district.

WUEST, J., joins this dissent.