Crescent Foods, Inc. v. Evason Pharmacies, Inc., 2016 NCBC 73.

STATE OF NORTH CAROLINA

COUNTY OF WAYNE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1852

CRESCENT FOODS, INC.,
              Plaintiff,

v.

EVASON PHARMACIES, INC.,
              Defendant.

)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER ON
DEFENDANT'S MOTION TO
DISMISS**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendant Evason Pharmacies, Inc.'s Motion to Dismiss ("Defendant's Motion to Dismiss") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

THE COURT, having considered Defendant's Motion to Dismiss, the briefs in support of and in opposition to Defendant's Motion to Dismiss, the arguments of counsel, and other appropriate matters of record, concludes that the Defendant's Motion to Dismiss should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Everett, Womble & Lawrence, LLP by Ronald T. Lawrence, II, Esq., for Plaintiff.*

> *The Law Office of John T. Benjamin, Jr., P.A. by John T. Benjamin, Jr., Esq. and Paula M. Shearon, Esq., for Defendant.*

McGuire, Judge.

FACTUAL AND PROCEDURAL BACKGROUND

1.     Plaintiff Crescent Foods, Inc. ("Plaintiff") is a North Carolina corporation that owns and operates Piggly Wiggly grocery stores, including stores in Mount Olive and Faison, North Carolina. (Compl. ¶¶ 1, 3.) Defendant Evason Pharmacies, Inc. ("Defendant") is also a North Carolina corporation, and is in the business of operating and managing pharmacies. On October 1, 2001, Plaintiff and Defendant entered into a Management Agreement ("Management Agreement" or "Agreement"), pursuant to which Defendant would manage Plaintiff's pharmacies in the Faison and Mount Olive stores. (*Id.* ¶ 4, Ex. A.) The Management Agreement expired by its own terms on April 30, 2013, and was not renewed. (*Id.* ¶ 4.)

2.     The parties' respective rights and duties were outlined in the Management Agreement. The Agreement provided that Defendant's duties included "managing the [pharmacies], including supervision of all employees of the Store providing services thereto" and the "ordering of all the prescription drugs and health and beauty care products for the [pharmacies]." (Management Agreement ¶ 3.) Under the Agreement, Plaintiff was required to provide to Defendant "at no charge," *inter alia*, the following: "the facilities and fixtures . . . necessary to operate the [pharmacies]"; "computer software required for pharmacy operations"; and, "computer equipment, printer[s], copier[s], and facsimile machine[s]." (*Id.* ¶ 4). The Management Agreement also provided that Plaintiff "shall employ or engage the pharmacists and other staff . . . necessary to operate the [pharmacies]" and that "[a]ny

such employees shall be considered employees of the [Plaintiff] and shall participate in all employee benefits offered by the [Plaintiff] to its employees." (*Id.*)

3. The Management Agreement provided the following regarding Defendant's compensation for its services:

> Compensation: As compensation for [Defendant's] services hereunder, [Defendant] shall be entitled to fifty percent (50%) of the Gross Profit (as defined hereinbelow) from the [pharmacies'] prescription sales calculated on a quarterly basis. For purposes of this Agreement, Gross Profit shall be calculated using the cash basis method of accounting and shall mean total gross [ ] prescription sales less the following expenses: cost of goods sold, supplies, sales taxes, and salaries, compensation (including employer contributions for employment taxes) and employee fringe benefits (such as [Plaintiff's] insurance plan and retirement plan) payable to any pharmacists and other employees required to operate the [pharmacies].

(*Id.* ¶ 5.)

4. Finally, the Management Agreement provided that Defendant's "relation to the [Plaintiff] . . . shall during the period or periods of its engagement and service hereunder be that of an independent contractor." (*Id.* ¶ 14.)

5. Defendant was a member of, and owned stock in, North Carolina Mutual Drug Company ("Mutual Drug") (*Id.* ¶ 10.) As a stockholder, Defendant was able to buy the prescription medications for the pharmacies from Mutual Drug at a preferred, or discounted, price. The Management Agreement specifically provided that Plaintiff agreed "to stock the [pharmacies'] prescription inventory and health and beauty care products through [Defendant's] membership in [Mutual Drug]."

(Management Agreement, pmbl.) Plaintiff alleges that the reason for doing so was to take advantage of the competitive pricing offered by Mutual Drug. (Compl. ¶ 11.)

6. Mutual Drug provided quarterly and annual "rebates" to its stockholders based on the prescription drugs purchased by the stockholder. (*Id.* ¶¶ 12–13.) Plaintiff alleges that the amount paid to a stockholder was calculated based on the amount of prescription drugs ordered, not on the amount of stock owned in the company, and were not "dividends" paid by Mutual Drug. (*Id.*) Plaintiff also alleges that the rebates paid to Defendant by Mutual Drug were for prescription drugs Defendant purchased for Plaintiff's pharmacies and "should not have been kept by Defendant but should have been deposited into the accounts of the stores and accounted for in the calculation of the gross profit of each store." (*Id.* ¶ 12.) The rebates were a "dollar-for-dollar reduction of the 'cost of goods sold,'" and Plaintiff claims that it had a right under the Management Agreement to a 50% share of the rebates. (*Id.* ¶¶ 11, 16.)

7. Plaintiff further alleges that despite the provision of the Management Agreement stating that Defendant was an independent contractor of Plaintiff, the relationship created by the Agreement functioned like a partnership and created a fiduciary relationship between the parties. (*Id.* ¶¶ 14–17.) Plaintiff claims that Defendant had a fiduciary duty to share the rebates with Plaintiff or should have accounted for the rebates in calculating the Gross Profit. (*Id.*)

8. Plaintiff did not know that Defendant was receiving the rebates from Mutual Drug during the 12 years that the parties operated under the Management

Agreement. (*Id.* ¶ 14.) Defendant did not inform Plaintiff about the rebates, or include the rebates in the calculation of Gross Profits. (*Id.*) Plaintiff only learned about the rebates after the expiration of the Management Agreement, when Plaintiff purchased stock in Mutual Drug and started receiving the annual rebates from Mutual Drug. (*Id.*)

9.     On October 27, 2015, Plaintiff filed this lawsuit in the Superior Court of Wayne County. The Complaint does not separately set out causes of action in separate counts, but appears to assert the following claims: breach of contract (*Id.* ¶ 18); breach of fiduciary duty (*Id.* ¶ 19); fraud and constructive fraud (*Id.* ¶ 21); and unfair and deceptive trade practices (*Id.* ¶ 33.)

10.     On November 25, 2015, Defendant filed a Notice of Designation to the North Carolina Business Court. On December 2, 2015, the Chief Justice of the North Carolina Supreme Court,  issued an Order, pursuant to G.S. § 7A-45.4(b), designating this case as a mandatory complex business case, and the case was assigned to the undersigned.

11.     On January 15, 2016, Defendant filed Defendant's Motion to Dismiss in which it contends that the Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6). The Court held a hearing on Defendant's Motion to Dismiss and it is now ripe for determination.

DISCUSSION

12.     Defendant moves to dismiss Plaintiff's claim under Rule 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must

determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In making this determination, the Court must take all well-pleaded allegations of the complaint as true. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). Nonetheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008). A complaint can be dismissed under Rule 12(b)(6) if: (a) the complaint on its face reveals that no law supports plaintiff's claim; (b) the complaint reveals on its face the absence of fact sufficient to make a good claim; or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Mileski v. McConville*, 199 N.C. App. 267, 269, 681 S.E.2d 515, 517 (2009) (citing *Oates v. Jag, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

*a. Claim One — Breach of Contract.*

13. As its first claim, Plaintiff alleges that Defendant breached the Management Agreement by failing to share the rebates Defendant received and failing to account for the rebates in determining Gross Profit. Defendant contends the breach of contract claim fails because the Management Agreement does not give Plaintiff a right to a share in the payments Defendant received from Mutual Drug. In addition, Defendant argues that the breach of contract claim is barred by the three year statute of limitations applicable to contract claims. *See* G.S. § 1-52(1).

"The statute of limitations may provide the basis for dismissal on a motion pursuant to . . . Rule 12(b)(6) if the face of the complaint establishes that [a] plaintiff's claim is barred." *Liptrap v. City of High Point*, 128 N.C. App. 353, 355, 496 S.E.2d 817, 818 (1998).

14. To state a claim for breach of contract, a plaintiff must allege the "(1) existence of a valid contract and (2) breach of the terms of that contract." *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Defendant does not contend that the Management Agreement was not a contract. Instead, Defendant argues that the Management Agreement does not expressly require that the "dividends"[1] received by Defendant from Mutual Drug were to be included in the calculation of gross profits, and, accordingly, Defendant's failure to account for the payments was not a breach of the Agreement. (Def.'s Br. Supp. Mot. Dismiss 17–18.) Plaintiff contends that Mutual Drug's payments to Defendant were rebates on the prescription drugs purchased by Defendant for Plaintiff's pharmacies, and must be accounted for in calculating the "costs of goods sold" as that term is used in the Agreement. (Pl.'s Br. Opp. Mot. Dismiss 18.)

15. The Management Agreement is a contract, and its meaning must be determined from within its four corners. *Ussery v. Branch Banking & Trust Co.*, 368 N.C. 325, 336, 777 S.E.2d 272, 279 (2015); *Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010). When a contract is clear and unambiguous, "construction of

---

[1] The parties dispute whether the payments by Mutual Drug to Defendant were dividends or rebates. (Def.'s Br. Supp. Mot. Dismiss 2–3; Compl. ¶ 13.) For purposes of this motion, the Court must accept as true Plaintiff's allegations that the payments were rebates, and not dividends.

the agreement is a matter of law for the court . . . and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Lynn*, 202 N.C. App. at 432, 689 S.E.2d at 205. The question of whether contractual language is ambiguous is a question for the court to determine. *Id.* "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law. When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury." *Commscope Credit Union v. Butler & Burke, LLP*, 237 N.C. App. 101, 111, 764 S.E.2d 642, 651 (2014), *rev'd, in part, on other grounds*, 2016 N.C. LEXIS 812 (2016). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs.*, LLC, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012).

16.     The Management Agreement does not provide for how the "costs of goods sold" shall be determined. Even if the term has a generally accepted meaning that makes it unambiguous, however, the parties dispute the nature of the payments by Mutual Drug to Defendant. A "rebate" determined as a percentage of the dollar amount of prescription drugs purchased might need to be accounted for in calculating the costs of goods sold, but a dividend paid to the purchaser based on stock ownership might not. In other words, the resolution of that dispute may very well determine whether such payment would, or would not, be included in the "cost of goods sold." Taking Plaintiff's allegation that the payments to Defendant were rebates as true, the Court concludes that the Management Agreement is at least susceptible of an

interpretation that would require accounting for rebates in calculating cost of goods sold, and that Plaintiff's breach of contract claim cannot be dismissed based on interpretation of the Management Agreement at this stage of the proceedings.

17. Defendant also contends that the breach of contract claim is barred by the three-year statute of limitations in G.S. § 1-52(1). Plaintiff alleges that Defendant began to receive the rebates "immediately upon entering the [M]anagement [A]greement" but did not disclose the rebates or account for them in determining Gross Profits. (Compl. ¶ 14.) Accordingly, Defendant contends that the first accounting, and first alleged breach of the Management Agreement, would have occurred "in or about January, 2002." (Def.'s Br. Supp. Mot. Dismiss 9.) Since Plaintiff did not file the Complaint until October 27, 2015, its claim for breach of contract is outside the statute of limitations. (*Id.* at 9–10.) In its brief, Plaintiff argues that the continuing wrong doctrine applies to the breach of contract claim. Plaintiff contends that since the Management Agreement did not expire until April, 2013, and Plaintiff filed this action within three years of that expiration, it should be permitted to reach back and recover for all breaches from October 2001 forward. (Pl.'s Br. Opp. Mot. Dismiss 7–9.)

18. As a preliminary matter, the Court must determine the appropriate statute of limitations applicable to Plaintiff's claim for breach of contract. At the hearing on the Motion to Dismiss, Plaintiff's counsel for the first time argued that the Management Agreement was executed by the parties under seal. The statute of limitations for instruments executed under seal is ten (10) years from the date of

breach. G.S. § 1-47(2). The Management Agreement was signed on behalf of Defendant by, apparently, a corporate official.[2] To the immediate left of the Defendant's signature are the typed words "Corporate Seal." The words "Corporate Seal" are contained within what appears to be a hand-drawn circle, and the words "Evason Pharmacies, Inc." are written inside of the circle. Below the words "Corporate Seal," and within the circle, is the word "Attest:," and next to that the name "Belinda English" is handwritten on the document. The Management Agreement contains no other reference to the document being executed under seal.

19.    "The seal of a corporation is not in itself conclusive of an intent to make a specialty [sealed instrument]" and, "the determination of whether an instrument is a sealed instrument, commonly referred to as a specialty, is a question for the court." *Square D Co. v. C. J. Kern Contractors, Inc.*, 314 N.C. 423, 426, 334 S.E.2d 63, 65, (1985). "[T]he question to be answered in order to determine whether the corporate seal transforms the party's contract into a specialty is whether the body of the contract contains any language that indicates that the parties intended that the instrument be a specialty *or whether extrinsic evidence would demonstrate such an intention. Id.* at 428, 334 S.E.2d at 66 (emphasis added). Here, although the body of the Management Agreement does not contain language showing that the parties intended it to be a sealed instrument, Plaintiff might be able to show such intent through extrinsic evidence. Plaintiff's allegations, including the signature page of the

---

[2] The signature page of the Management Agreement states that it is being executed by the parties' "respective corporate officers."  The signature of Defendant's representative is illegible and the Complaint does not identify Defendant's signatory.

Management Agreement, have raised a sufficient question as to whether the parties intended to execute the Agreement under seal to make it inappropriate for the Court to conclude, at this stage of the proceedings, that the breach of contract claim is subject to the three year statute of limitations.[3] Accordingly, the Court will apply the ten-year limitations period in G.S. § 1-47(2) in deciding Defendant's Motion to Dismiss.

20. The statute of limitations for a breach of contract does not begin to run until the alleged breach occurs and the cause of action accrues. *Silver v. N.C. Bd. of Transp.*, 47 N.C. App. 261, 266, 267 S.E.2d 49, 53–54 (1980); *Liptrap,* 128 N.C. App. at 355, 496 S.E.2d at 819 (noting that the statute of limitations for a breach of contract claim "begins to run on the date the promise is broken"). "The general rule may be different for contracts which envision a continuum of payments or obligations . . . . There, each failure to pay is considered a separate breach and a new limitations period may commence each time a payment is not made." *GR&S Atl. Beach, LLC v. Hull*, 2012 NCBC LEXIS 54, at *27 (N.C. Super. Ct. 2012); *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990) (noting that where a contract imposes on a party an obligation to make periodic payments in installments "the statute of limitations runs against each installment independently as it becomes due"); *U.S. Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C.

---

[3] The only published North Carolina appellate decisions the Court was able to locate in which the Court determined whether an instrument was intended to be a sealed instrument as a matter of law were decided on motions for summary judgment where the parties had an opportunity to present extrinsic evidence. *See generally Square D Co.,* 314 N.C. 423, 334 S.E.2d 63; *Dunes S. Homeowners Ass'n v. First Flight Builders*, 341 N.C. 125, 459 S.E.2d 477 (1995); *Blue Cross and Blue Shield v. Odell Assocs.,* 61 N.C. App. 350, 301 S.E.2d 459 (1983).

App. 418, 426, 363 S.E.2d 665, 669 (1988) (same). "This principle has been applied to annual tax obligations arising out of a contract, lease payments, a computer system service contract, and improper overcharges for workers' compensation insurance." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 2015 NCBC LEXIS 64, at *9 (N.C. Super. Ct. 2015); *see also Jacobs v. Cent. Transp., Inc.*, 891 F. Supp. 1120 (E.D.N.C. 1995) (finding that periodic deductions from employee's pay by employer for workers' compensation insurance each constituted a separate breach which started new limitations period); *Broadnax v. Associated Cab & Transp., Inc.*, 2016 NCBC LEXIS 29, at *17–19 (N.C. Super. Ct. 2016) (finding that deductions from compensation payments for various business related fees started new limitations periods).

21.     The alleged breaches of the Management Agreement in this case fall under the accrual rule applicable to installment-type contracts. The Agreement called for a quarterly accounting of Gross Profits.  The accountings would have occurred each quarter from early 2002 through the expiration of the Management Agreement in 2013. Each quarter that Defendant did not account for the rebates, it breached its obligations under the Management Agreement and a new cause of action for breach of contract accrued. Accordingly, Plaintiff's claim for breaches of the Management Agreement occurring on or after October 27, 2005, are timely raised.[4]  Defendant's

---

[4] Application of the continuing wrong doctrine leads to the same result. The doctrine applies where a claim is based on "the result of 'continual unlawful acts,' each of which **restarts** the running of the statute of limitations. . . ." *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (emphasis added); *Marzec v. Nye*, 203 N.C. App. 88, 95, 690 S.E.2d 537, 542 (2010) (holding that the plaintiff could pursue breach of fiduciary duty claim based on controlling shareholder's refusal to pay the plaintiff's monthly salary

Motion to Dismiss as to claims for breach of contract occurring on or after October 27, 2005 should be DENIED, but with regard to claims arising before October 27, 2005, should be GRANTED.

*b. Claims Two and Four — Breach of Fiduciary Duty and Constructive Fraud.*

22.     Plaintiff alleges that the Management Agreement made Defendant "essentially a 'partner' with Plaintiff in the businesses of the pharmacies," and "that Plaintiff trusted and relied upon Defendant in the management of the pharmacies." (Compl. ¶¶ 15, 17.) Plaintiff claims that "Defendant breached its fiduciary duty owed to Plaintiff" and committed constructive fraud by not sharing and accounting for the rebates from Mutual Drug.  (*Id.* ¶¶ 19, 21.) Defendant contends that Plaintiff has alleged nothing more than a contractual relationship between the parties that expressly defined Defendant as an independent contractor, and not as a partner. (Def.'s Br. Supp. Mot. Dismiss 11–13.)

23.     Although partners in a general partnership owe one another fiduciary duties, Plaintiff has not adequately alleged the existence of a partnership with Defendant. Indeed, Plaintiff's own allegations contradict such a conclusion. The North Carolina Uniform Partnership Act, codified at Chapter 59 of our General Statutes, provides the basis for the "legal concept" of partnership. To that end, the Act defines a partnership as "an association of two or more persons to carry on as co-owners of a business for profit." G.S. § 59-36(1). Our Supreme Court has elaborated:

---

"during the three years preceding the filing of this action"). The continuing wrong doctrine does not permit a party to pursue claims based on wrongs completed and accruing outside of the limitations period.

> To make a partnership, two or more persons should combine their property, effects, labor, or skill in a common business or venture, and under an agreement to share the profits and losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business.

*Johnson v. Gill*, 235 N.C. 40, 44–45, 68 S.E.2d 788, 793 (1952).

24. Since a written or express partnership agreement is not required, and none is alleged here, a "*de facto* partnership may be found by examination of a [sic] parties' conduct, which shows a voluntary association of partners." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 438, 727 S.E.2d 291, 299 (2012). Put another way, a partnership "may be inferred" where the "circumstances demonstrate a meeting of the minds with respect to the material terms of the partnership agreement." *Compton v. Kirby*, 157 N.C. App. 1, 11, 577 S.E.2d 905, 912 (2003). In this case, the Management Agreement itself expressly states that Defendant was an independent contractor. (Management Agreement ¶ 14.) This strongly weighs against any contention that the parties had a "meeting of the minds" as to the formation of a partnership.

25. Under North Carolina law, there are also two "indispensable" requirements that *must* be met for a legal partnership to exist. *Best Cartage*, 219 N.C. App. at 438, 727 S.E.2d at 299 (quoting *Wilder v. Hobson*, 101 N.C. App. 199, 202, 398 S.E.2d 625, 627 (1990)). The first requirement is the "sharing of any actual profits." *Id.* The second requirement is co-ownership of the business. *Id.* The Management Agreement provided that the parties would share the Gross Profits

from the sale of prescription drugs by the pharmacies, but only as a means of compensating Defendant for its services under the agreement. North Carolina courts have recognized that where the parties' agreement to share profits was clearly intended to compensate one party, no partnership exists. *See Am. Tr. Co. v. Life Ins. Co.*, 173 N.C. 558, 562, 92 S.E. 706, 708 (1917) (holding that "there is no partnership if sharing in the profits is a mere means of ascertaining and determining the compensation for the services rendered"). The Management Agreement makes clear that the sharing of profits was intended only as a means of compensating Defendant for its services. The sharing of profits does not support the existence of a partnership under these circumstances.

26.     Plaintiff also has not alleged Defendant and Plaintiff were co-owners of any business. To the contrary, under the Management Agreement, Plaintiff owned but provided for Defendant's use of all the facilities, fixtures, equipment, and inventory necessary for the pharmacies. Defendant provided the management services to operate the pharmacies. Plaintiff and Defendant did not share in the overall profits from <u>all</u> sales by the pharmacies, but only in the profits generated from prescription drug sales. Plaintiff has failed to allege the existence of a partnership such that Defendant would owe Plaintiff a fiduciary duty.

27.     Finally, to the extent Plaintiff contends that, even absent a partnership between the parties, Defendant owed Plaintiff a fiduciary duty, such contention is without merit. North Carolina law recognizes a fiduciary relationship under the following circumstances:

> [T]here has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

*Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707–08 (2001) (internal quotations omitted) (citing *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). "[O]nly when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 475, 675 S.E.2d 133, 138 (2009); *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *45–46 (N.C. Super. Ct. 2015).

28. Plaintiff has not alleged any facts to show that such a relationship existed here. At bottom, Plaintiff alleges that it contracted with Defendant for Defendant to operate part of Plaintiff's grocery business, and that Defendant did not abide by the parties' agreement. The allegations suggest that Plaintiff's relationship with Defendant was not that of contracting parties with relatively equal bargaining power. The allegations do not establish a relationship in which Defendant dominated Plaintiff or "held all the cards." In the absence of any such facts, Plaintiff's allegations that it trusted Defendant to honor the terms of the agreement do not transform its

relationship into a fiduciary one. Defendant's Motion to Dismiss Plaintiff's claims for breach of fiduciary duty and constructive fraud[5] should be GRANTED.

### c. Claim Three — Fraud.

29.     Plaintiff also alleges that Defendant's failure to disclose the rebates and to account for the rebates in calculating the Gross Profits constituted fraud.  (Compl. ¶¶ 21–23.) More particularly, Plaintiff alleges that Defendant, "falsely and fraudulently . . . fail[ed] to report the [rebates] to Plaintiff and represented to Plaintiff that the revenues and expenses as reported by Defendant truly and accurately reflected the actual revenues and expenses of the pharmacies for purposes of calculating the gross profits of the pharmacies." (*Id.* ¶ 21.) In order to state a claim for fraud, "the complaint must allege with particularity: (1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive; (3) that defendant intended to deceive; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentation or concealment." *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997). "A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009).

---

[5] *See White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) (noting that a relationship of trust and confidence, or a fiduciary relationship, is an essential element of a claim for constructive fraud).

30. Plaintiff's fraud claim is based on precisely the same conduct underlying its claim for breach of contract: Defendants failure to disclose and account for the rebates in calculating the quarterly Gross Profit under the Management Agreement. North Carolina courts, however, generally hold that the economic loss rule prevents a party from pursuing a tort claim grounded in a breach of contract:

> [A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract.

*Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992). *See also Strum v. Exxon Co., USA*, 15 F.3d 327, 330 (4th Cir. 1994) (applying North Carolina law and reasoning that "[p]arties contract partly to minimize their future risks. Importing tort law principles of punishment into contract undermines their ability to do so."). "Flowing from this rule, in order to maintain tort claims for conduct also alleged to be a breach of contract, a plaintiff must identify a duty owed by the defendant 'separate and distinct from any duty owed under a contract.'" *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *8 (N.C. Super. Ct. 2016). "The economic loss rule, therefore, will bar [ ] tort claims if the allegedly offending conduct is also a breach of the parties' contract and Plaintiff fails to identify a duty separate and distinct from [the defendant's] contractual obligations." *Id.*

31.    In *Forest2Market, Inc.,* the plaintiff contracted with the defendant to design and implement a software platform for the plaintiff's business. *Id.* at *2–3. The plaintiff subsequently became dissatisfied with the defendant's work on the platform and brought suit against the defendant for breach of contract, fraud, and other torts alleging that defendant knowingly overbilled the plaintiff for work on the project and concealed the overbilling. *Id.* at *6. The Court applied the economic loss rule and dismissed the plaintiff's tort claims, including the claim for fraud. *Id.* at *12. The Court rejected the plaintiff's argument that the defendant "owed a duty not to provide deceptive or misleading information that is separate and distinct from any contractual duties owed." *Id.* at *11. Instead, the Court held that "[b]ecause [the plaintiff] alleges that the parties were performing under the contract when the purportedly tortious conduct occurred, the Court concludes that [the defendant] did not owe [the plaintiff] a separate and distinct duty not to provide deceptive and misleading information in these circumstances." *Id.* at *11–12. Rather, the fraud and other tort claims raised by the plaintiff "attempt to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim," and "[s]uch attempts are inconsistent both with North Carolina law and sound commercial practice." *Id.* at *12 (citation omitted).

32.    Plaintiff fails to allege that Defendant owed Plaintiff a duty to disclose the rebates outside of Defendant's contractual obligations under the Management Agreement, and makes no argument in its brief that Defendant had such a duty. (Pl.'s

Br. Opp. Mot. Dismiss 16–17.) Accordingly, Plaintiff's claim for fraud should be dismissed.

33.     Defendant also argues that the claim for fraud must be dismissed because Plaintiff has not alleged with sufficient particularity the facts underlying the claim. (Def.'s Br. Supp. Mot. Dismiss 13–17.) Plaintiff bears the burden of satisfying a heightened pleading standard under Rule 9(b). "A complaint charging fraud must allege [the] elements with particularity." *Hunter v. Spaulding*, 97 N.C. App. 372, 377–78, 388 S.E.2d 630, 634 (1990). This standard is "met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002).

34.     The Court concludes that Plaintiff has failed to allege its claim for fraud with sufficient particularity. The Complaint does not allege the identity of any specific person who made misrepresentations or omissions, does not provide either specific or even approximate dates and times of, or the places at which, such misrepresentations were made. Plaintiff undoubtedly knows the identities of specific individuals it communicated with at Defendant's business. It also must have been presented with the quarterly and other accountings prepared regarding the pharmacies' prescription drug sales, and should have been able to provide specific dates on which those accountings were received and where such information was provided or conveyed to Plaintiff. The Complaint contains none of this specific

information, but instead makes only conclusory allegations that Defendant failed to disclose and account for rebates over the course of approximately 12 years. *Hardin v. York Mem'l Park*, 221 N.C. App. 317, 329, 730 S.E.2d 768, 778 (2012) ("A trial court properly dismisses a claim for failure to plead fraud with particularity 'where there are no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations.") (quoting *Bob Timberlake Collection, Inc. v. Edwards,* 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006)); accord *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 297, 727 S.E.2d 1, 10 (2012); *S.N.R. Mgmt. Corp. v. Danube Partners, 141, LLC*, 189 N.C. App. 601, 610, 659 S.E.2d 442, 449 (2008).

35. For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's claim for fraud should be GRANTED.[6]

*d. Claim Five — Unfair and Deceptive Trade Practices.*

36. In Plaintiff's final claim, it alleges that the actions which form the basis for its other claims also constitute a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), G.S. § 75-1.1. To state a claim for violation of the UDTPA, a plaintiff must allege that: "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Capital Res., LLC v. Chelda, Inc.*, 223 N.C. App. 227, 239, 735 S.E.2d 203, 212 (2012). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical,

---

[6] Because the Court concludes that Plaintiff failed to state a fraud claim, it needs not address Defendant's statute of limitations argument regarding the fraud claim.

oppressive, unscrupulous, or substantially injurious to consumers." *Huff v. Autos Unlimited*, 124 N.C. App. 410, 413, 477 S.E.2d 86, 88 (1996). "A practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Id.* Whether a trade practice is unfair or deceptive depends upon the facts of each case and their impact on the parties. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

37. Plaintiff's UDTPA claim, both as pleaded in the Complaint and argued in its response to the Motion to Dismiss, is premised entirely on the conduct that also gives rise to its other claims. (*See* Compl. ¶ 33; Pl.'s Br. Opp. Mot. Dismiss 15 (describing the conduct giving rise to Plaintiff's UDTPA claim as the same "conduct which constitutes a breach of fiduciary duty and constructive fraud").) The Court has dismissed Plaintiff's claims for breach of fiduciary duty and fraud. To the extent Plaintiff's claim for violation of the UDTPA is predicated on these claims, it too should be dismissed. This leaves only the allegations of breach of contract to support the UDTPA claim.

38. It has long been recognized that a breach of contract, even if intentional, "is not sufficiently unfair or deceptive to sustain an action under" the UDTPA. *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367–68, 533 S.E.2d 827, 832–33 (2000) (citing *Branch Banking and Tr. Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)). "It is 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its

contractual obligations.'" *Id.* at 368, 533 S.E.2d at 833 (citation omitted). Instead, "[t]o become an unfair trade practice, the breach of contract must be 'characterized by some type of egregious or aggravating circumstance.'" *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *61 (N.C. Super. Ct. 2011) (quoting *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998)).

39. To the extent Plaintiff asserts that the underlying breach of the Management Agreement also constitutes a violation of the UDTPA, the Court concludes that Plaintiff has failed to allege aggravating factors accompanying the breach that would support a claim of unfair and deceptive trade practices. Rather, Plaintiff merely alleges that Defendant failed to perform its obligations under the agreement by not sharing with Plaintiff the rebates it received from Mutual Drug and, ultimately, by not properly calculating the Gross Profit generated by the prescription drug sales. Plaintiffs have not alleged any circumstance that would give rise to a claim under the UDTPA. *Forest2Market, Inc.*, 2016 NCBC LEXIS 3, at *19 (allegations that the defendant knowingly overbilled the plaintiff and concealed the overbilling are not "aggravating circumstances" sufficient to create UDTPA claim). The Court concludes that Defendant's Motion to Dismiss Plaintiff's claim for violation of the UDTPA should be GRANTED.

THEREFORE, IT IS ORDERED that:

Defendant's Motion to Dismiss is GRANTED, in part, and DENIED in part as follows.

40.     Defendant's Motion to Dismiss Plaintiff's claims for breach of contract arising on or after October 27, 2005 is DENIED, but Defendant's Motion to Dismiss Plaintiff's claims for breach of contract arising before October 27, 2005, is GRANTED.

41.     Defendant's Motion to Dismiss Plaintiff's claims for breach of fiduciary duty, constructive fraud, fraud, and violation of the UDTPA is GRANTED.

42.     Except as expressly granted above, Defendant's Motion to Dismiss is DENIED.

This the 5th day of October, 2016.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
   for Complex Business Cases